FILED - USDC NDTX - AB
DEC 26 2023 AM10:42

THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| Steve Van Horne, | § | |
| *propria persona, in his natural capacity* | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| vs. | § | **1-23CV-0240H** |
| | § | CIVIL ACTION NO. |
| , BRANDI DEREMER, BRANDY MALDONADO | § | |
| JUDGE HARRIETT HAAG and | § | |
| TAYLOR COUNTY COURT AT LAW NO. 2, | § | |
| *In their official capacities* | § | |
| | § | |
| **Defendants,** | § | |

## COMPLAINT
*[Common Law Jury Trial Demanded]*

Comes now Plaintiff Steve Van Horne, appearing to notice this court, that Judge Harriett Haag, Taylor County Court at Law No. 2, Brandy Maldonado, and Brandi DeRemer, are in civil violation of the laws of the United States of America Constitution, the Sovereign state of Texas, and is additionally involved in the violations of the Plaintiff's constitutionally protected personal liberty, natural rights, and violations against the peace and dignity of Plaintiff within this state's Republic. Therefore, the Plaintiff files his Complaint under Title 42 U.S.C. Section 1983, 1985 and, 1986 against Judge Harriett Haag, Taylor County Court at Law No. 2, Brandy Maldonado, and Brandi DeRemer, herein Defendants collective, for violations against personal and natural protections guaranteed to him by the First, Fifth, and Fourteenth Amendments of the U.S. Constitution. And seek Declaratory and Injunctive Relief for the Defendants' actions under color of law in their capacities as government entity and officers against Plaintiff and alleges as follows:

## I.    SUMMARY

Black's law Dictionary 9th ed. definition of injury:
> *The violation of another's legal right, for which the law provides a remedy; a wrong or injustice…injury involves an actionable invasion of a legally protected interest.*

This claim is being brought by Steve Van Horne and arises from injuries suffered in part or in whole by him, herein referred to as Plaintiff and is supported by the following:

This complaint arises as a result of redress of judicial procedures in the complaint brought against Judge Robert Bob Jones (Civil Action No. 1:23-cv-00017-H-BU), and is supported by the following:

**PLAINTIFF'S APPEAL TO TAYLOR COUNTY COURT AT LAW No. 2**

1

On April 21, 2021, Plaintiff appealed the Justice of The Peace Precinct 2 Court's decision (Presided over by Judge Bob Jones) to Taylor County Court at Law No. 2, Presided over by Judge Harriett L. Haag (Exhibit: A). The Justice Court forwarded all the documents pertaining to Cause No: C20-14854712 & C20-14854812 to the County Court at Law 2 along with Plaintiff's appeal letter to the Court. The Appeal Letter was clear that Plaintiff was still challenging the Justice Court's jurisdiction, which was ignored at the Justice Court level. If the County Court had impartially reviewed the case, it would have been evident that neither court had personal or subject matter jurisdiction to bind any duty upon the Plaintiff.

Approximately six months after Plaintiff appealed he received a letter from Brandi DeRemer, the Court Administrator at the time for County Court at Law 2, dated October 11, 2021, addressing Pro Se Defendants and Counsel, which stated in the first paragraph:

> *THERE ARE NEW RULES FOR THE JP & CITY APPEAL DOCKET. The JP & City Appeal Docket will be called by Judge Haag on FRIDAY, November 5, 2021 beginning at 8:30 a.m. There will several changes in the way we handle JP & City Appeals.*

On the fourth page of the listed cases, Plaintiff's cases were listed (Exhibit: B).

Plaintiff responded with an affidavit of Special Appearance for the purpose of challenging the state's presumption and assumption of jurisdiction filed October 22, 2021. Plaintiff made his case for matter of cons ience, and asked that the State and Court prove its jurisdiction according to the laws of the land or dismiss cases: **2-284-21 & 2-285-21.** Plaintiff also sent an order to dismiss the charges for lack of jurisdiction and supporting exhibits and cases (Exhibit: C).

Plaintiff did not receive a response from the County Court of Law No. 2 and therefore went to court on November 5, 2021. While in the court room, before the proceedings began, Plaintiff attempted to explain to a gentleman, whom Plaintiff presumed to be the bailiff, what he was there for. The gentleman asked Plaintiff to go over to an unidentified woman and explain to her what he was there for. As Plaintiff explained that he needed a special appearance, due to jurisdictional issues to the unidentified woman, the assistant district attorney who represented the state at the Justice Court trial (identified as Tyler Cagel) called the unidentified woman over to him. After they spoke, the unidentified woman returned to Plaintiff and told him that she had to take him to the court administrator to set another court date in order to accommodate Plaintiff's request. She then walked Plaintiff over to the court administrator's office, where she explained the matter to the court administrator. Plaintiff asked the court administrator if he could get the date for the special appearance and the court administrator said when she rescheduled a hearing she would send it to Plaintiff.

After this, Plaintiff never received any documents from the court, and certainly no notification for a rescheduled court date. On January 5th 2022, Plaintiff went to a justice court for an unrelated hearing. There he was arrested by Deputies Pippins and Bond of the Taylor County Constable's office, for failing to show up to the hearing at the Taylor County Court At Law No. 2, Presided over by Judge Harriett L. Haag on December 17, 2021, and was held against his will.

Initially, Plaintiff thought the arrest was for the November 5, 2021, court date, which he did attend, and had been awaiting a new court date. Therefore, he tried to explain the events that took place at the County Court on November 5, 2021 to the officers, reiterating that chain of events previously stated which mentions ADA Tyler Cagel. However, later it became apparent that the County Court at Law No. 2 was claiming to have rescheduled a court date, sent notification to the Plaintiff, and claimed Plaintiff failed to show up.

While Plaintiff was handcuffed and being held against his will, the deputies (Pippins and Bond) explained to Plaintiff that his choices were to either go through the process of paying the tickets, or go through the process of going to jail and having his vehicle towed from the parking lot of the building he was arrested at.

Under duress, Plaintiff told the constables deputies that he would pay the tickets. The deputies (Pippins and Bond) walked Plaintiff down the street in handcuffs to another building where, under duress, he involuntary, against his will, went through the process of paying for two citations which were written to him, while he was exercising personal rights of locomotion guaranteed by the Constitution, by credit card.

Upon arriving home after his release (January 05, 2021), Plaintiff called the county court and requested a copy of the letter which the court claimed to have sent for the rescheduled court date. Plaintiff was told that he would have to call the county clerk for the letter. Plaintiff contacted the County Clerk's office and asked for a copy of the letter which was written to Plaintiff from the county court, which notified him to appear before the court on December 17, 2021.

On January 13, 2022 Plaintiff received an email from the County Clerk's office (Exhibit: D). The email furnished two vague letters with Plaintiff's address, dated November 9, 2021, which addressed a bondsman, cc'd to the county court clerk (Exhibit: E). However, they were both filed by the county court clerk on January 05, 2022, the day Plaintiff was arrested, which Plaintiff saw for the first time that day on 01-13-23. The email included the Defendants' court order for Plaintiff's arrest (Exhibit: F) and the documents Plaintiff was fraudulently compelled to sign while under duress, signed by Judge Harriet Haag and prosecuting attorney Brandi Maldonado (Exhibit: G).

Exhibit: G documents a letter which:
1. Was produced by the County Court at Law No. 2, signed by Court Administrator Brandi DeRemer, on Taylor County Court at Law 2 official letter head.
2. Was dated November 09, 2021 and carbon copied (cc'd) to the county clerk. However, it was not filed with the county clerk until January 05, 2022, the day Plaintiff was arrested, and almost two months after the letter was supposedly produced, cc'd to the county clerk, and supposedly sent, that day it was produced or shortly after, to Plaintiff. This indicates that the letter dated was not received by the county clerk until January 5th and could not have been sent on November 09, 2021 to the county court clerk or the plaintiff.
3. The address was *"Dear Bondsman,"* not the Plaintiff by name. This was confusing to Plaintiff as he had no bondsman, did not guarantee a bond, and did not claim to be a surety in this case.

If the letter had reached Plaintiff the confusion would have prompted him to inquire in order to get clarity.

It is Plaintiff's belief that a notice was ever meant to reach him, but that there was a conspiring effort, to entrap him into not showing up for a court date, by not notifying him, but act as if the court sent notice, so he would later be arrested for not showing up to court, as a warrant was issued for his arrest on December 17, 2021, the day of the supposed scheduled hearing.

On January 15, 2022: Believing that there was a letter to Plaintiff, not a bondsman, which was sent with a rescheduled court date but not received, in order to search the record for himself, Plaintiff requested all the district court's correspondence to Steve Van Horne (Exhibit H), including:

a. the letter the district court sent to Mr. Van Horne on October 11, 2021 for court on November 5, 2021.
b. the letter the court sent to Steve Van Horne to notify him of a rescheduled court date of December 17, 2021.

On January 18, 2022, the county clerk responded to Plaintiff's request for all the court's correspondence with 15 files (Exhibit: I).

- *File No. 1 is Exhibit: C.*
- *File No. 2 is the brief from Plaintiff to the justice court, which was sent to the county clerk.*
- *File No. 3 is correspondence between Plaintiff and the JP2 Court.*
- *File No. 4 is correspondence between Plaintiff and the JP2 Court and that court's judgment.*

3

- *File No. 5 is all files from the JP2 Court.*
- *File No. 6 is correspondence between Plaintiff and the JP2 Court.*
- *File No. 7 is Exhibit: C again.*
- *File No. 8 is the same as File No. 2.*
- *File No. 9 is correspondence between Plaintiff and the JP2 Court.*
- *File No. 10 is correspondence between Plaintiff and the JP2 Court and that court's judgment.*
- *File No. 11 is correspondence between Plaintiff and the JP2 Court and that court's judgment.*
- *File No. 12 is Plaintiff's affidavit to proceed in forma pauperis.*
- *File No. 13 is Exhibit: E (2-285-21 letter).*
- *File No. 14 is Exhibit: E (2-284-21 letter).*
- *File No. 15 is Exhibit: E (2-285-21 letter) again.*

Later on January 18, 2022, believing that he had not received a letter from the county clerk to confirm the county court had sent notice to reschedule the hearing, Plaintiff again sent another email informing the clerk that he still didn't receive that documents (Exhibit: J).

On January 18, 2022, the county clerk sent an email with three files (Exhibit: K):

The first file was (Exhibit: E (2-284-21 letter)).

The second file was ironically the same letter Plaintiff received as Exhibit: B dated October 11, 2021, just as the original letter had been dated, except the first paragraph stated *"The JP & City Appeal Docket will be called by Judge Haag on **FRIDAY, December 17, 2021 beginning at 8:30 a.m.**"*

Strangely the date for the *JP & City Appeal Docket* would be *called by Judge Haag on FRIDAY, December 17, 2021 (Exhibit: L), instead of FRIDAY, November 5, 2021(See Exhibit: B)*. Yet both letters bore a send date of October 11, 2021.

Plaintiff did not receive Exhibit: L from the court, because the Defendants simply did not send it to the Plaintiff, just as the Defendants did not send Plaintiff a rescheduled date for court, yet had him arrested. For Exhibit: L to have been sent, Defendants would need to send Exhibit: B to Plaintiff dated *October 11, 2021* for a *November 05, 2021* hearing. Then schedule a special setting Dated *November 09, 2021* for court on *December 17, 2021* as claimed in (See Exhibit: E). Then go back in time to *October 11, 2021* to schedule a *JP & City Appeal Docket call* for *December 17, 2021, at 8:30 a.m.* (See Exhibit: L), the same day they scheduled (at a future time) the special setting for Plaintiff at 1:30 p.m. (See Exhibit: E)

The third file was dated February 8, 2021 for a JP & City Appeal Docket to be called by Judge Haag on FRIDAY, June 25, 2021 beginning at 1:30 p.m. (Exhibit: M). The only problem there is that Plaintiff did not appeal his case from the JP Court until on April 21, 2021, more than two months after the letter would have been sent (See Exhibit: A).

After having received many emails in an attempt to satisfy his request, the Plaintiff has received no document which the court sent to Plaintiff which addressed him by name, informing him to appear before the court for a special setting on a rescheduled date. Neither did Plaintiff ever receive a letter informing him that he missed the rescheduled court date. However, it became clear that the court was not dealing in good faith.

Although the <u>Fourteenth Amendment</u> does not interfere with the proper exercise of the police power, in accordance with the general principle that the power must be exercised so as not to invade unreasonably the rights guaranteed by the United States Constitution, it is established beyond question that every state power, including the police power, is limited by the <u>Fourteenth Amendment </u>(and others) and by the inhibitions they imposed.

Moreover, the ultimate test of the propriety of police power regulations must be found in the <u>Fourteenth Amendment</u>, since it operates to limit the field of the police power to the extent of preventing the enforcement of statutes in denial of Rights that the Amendment protects. **(See <u>Parks vs. State,</u>** 64 NE 682.)

> *"With regard particularly to the U.S. Constitution, it is elementary that a Right secured or protected by that document cannot be overthrown or impaired by any state police authority."* <u>**Connolly vs. Union Sewer Pipe Co.,**</u> *184 US 540;* <u>**Lafarier vs. Grand Trunk R.R. Co.,**</u> *24 A. 848;* <u>**O'Neil vs. Providence Amusement Co.,**</u> *108 A. 887*

> *"The police power of the state must be exercised in subordination to the provisions of the U.S. Constitution."* <u>**Bacahanan vs. Wanley,**</u> *245 US 60;* <u>**Panhandle Eastern Pipeline Co. vs. State Highway Commission,**</u> *294 US 613*

> *"But the police power, even as thus defined, vague and vast as it is, has its limitations, and it cannot justify any act which violates the prohibitions, express or implied, of the state or federal constitutions." **Byrne v. Md. Realty Com.,** 129 Md. 210;Goldman v. Crowther, 147 Md. 293,* <u>***Tighe vs. Osborne,***</u> *131 A. 801*

> *"As a rule, fundamental limitations of regulations under the police power are found in the spirit of the Constitutions, not in the letter, although they are just as efficient as if expressed in the clearest language."* <u>**Mehlos vs. Milwaukee,**</u> 146 NW 882

Plaintiff was accused of, and arrested for, crimes he did not commit, while he exercised his personal liberty right of locomotion in cooperation with his conscience and faith. Furthermore, he was denied the opportunity to defend himself by asserting his rights. The process which deputies Pippins and Bond explained for not going to jail included signing an Application for Deferred Adjudication, which is a waiver of trial, a plea of no contest, a guilty finding by the court, and a request for deferred adjudication of the offences which Plaintiff was charged, and a 90 day probation period (Exhibit: G) The documents which Plaintiffs signed (under duress) does not hold his position on the matter since he was falsely imprisoned without due process, and compelled, under duress, to comply against his will. Therefore, they are void.

The Court assumed that Plaintiff was in debt for a fine assessed for a crime he did not commit, Texas Constitution Article 1, Sec. 18 states the following:

> *IMPRISONMENT FOR DEBT. No person shall ever be imprisoned for debt.*

Imprisonment is defined as:

> *The act of putting or confining a man in prison; the restraint of a man's personal liberty; coercion exercised upon a person to prevent the free exercise of his powers of locomotion. **State v. Shaw, 73 Vt. 149, 50 A. 863.***

> *It is not a necessary part of the definition that the confinement should be in a place usually appropriated to that purpose; it may be in a locality used only for the specific occasion; or it may take place without the actual application of any physical agencies of restraint, (such as locks or bars,) but by verbal compulsion and the display of available force. **Pike v. Hanson, 9 N.H. 491.***

> *Every confinement of the person is an "imprisonment," whether it be in a common prison, or in a private house, or in the stocks, or even by forcibly detaining one in the public streets. **Norton v. Mathers, 222 Iowa 1170, 271 N.W. 321, 324.***

The state agents, under the directives of The Defendants imprisoned Plaintiff without due process of the law for what it assumed he owed for a crime, or not showing up to court. However, this was a false imprisonment due to the fact that the warrant was conspired and *illegally executed.*

False imprisonment:

> *The unlawful arrest or detention of a person without warrant, or by an illegal warrant, or a warrant illegally executed, and either in a prison or a place used temporarily for that purpose, or by force and constraint without confinement.* **Eberling v. State, 136 Ind. 117, 35 N.E. 1023.**

> *False imprisonment consists in the unlawful detention of the person of another, for any length of time, whereby he is deprived of his personal liberty.* **Mahan v. Adam, 144 Md. 355, 124 A. 901, 904.**


## THE COUNTY COURT HAD NO AUTHORITY TO BIND PLAINTIFF:

### 1. DEFECTIVE PROCESS

**14th Amendment** - *...nor shall any state deprive any person of life, liberty, or property, without due process of law;*

> *Courts have personal jurisdiction over a nonresident defendant when the state's long-arm statute permits such jurisdiction* ***and the exercise of jurisdiction is consistent with federal and state due-process guarantees.*** **Moncrief Oil Int'l Inc. v. OAO Gazprom, 414 S.W.3d 142, 149 (Tex).**

Due process of law guarantees has been established to protect private rights, such as those of the Plaintiff. To bring Plaintiff under the jurisdiction of a court it must be done by service of process or voluntarily. Plaintiff did not generally or voluntarily create the environment which warranted him to seek redress at the county court and though he gave the county court jurisdiction to hear the Justice court's case, which lacked due process, and dismiss it, he did not give the court jurisdiction to bind any duties to him.

> ***Plaintiff must be brought within the jurisdiction of the court by service of process or voluntarily***. *Whatever difficulty may be experienced in giving to those terms **a definition which will embrace every permissible exertion of power affecting private rights, and exclude such as is forbidden, there can be no doubt of their meaning when applied to judicial proceedings. They then mean a course of legal proceedings according to those rules and principles which have been established in our systems of jurisprudence for the enforcement and protection of private rights. To give such proceedings any validity,** there must be a tribunal competent by its constitution—that is, by the law of its creation—to pass upon the subject-matter of the suit; and, if that involves merely a determination of the personal liability of the defendant**, he must be brought within its jurisdiction by service of process within the state, or his voluntary appearance.*** **Pennoyer v. Neff, 95 U.S. 733, 24 L.Ed. 565.**

Plaintiff was not afforded due process at any stage of this process which has deprived him of his personal liberty of locomotion. He was not issued service of process by the officer in his traffic stop, nor did he voluntarily appear in court at the Justice Court (reference 1:23-cv-00017-H-BU), as the appearance was due to the threat of arrest. Neither did he appear voluntarily at the County Court level as he was arrested and compelled to comply to state statutory codes which he did not consent to. The County Court's only correspondence that was received by Plaintiff stated: *"Any case not handled will go into **Bond Forfeiture** and a warrant will be issued"* (Last sentence of Exhibit: B). Therefore, the threat of arrest was made against Plaintiff after appealing to the county court to intervene by dismissing the justice court's opinion as that court held a bench trial without allowing the Plaintiff the choice of a trial by jury. But that was not consent to bind any duties upon the Plaintiff.

In the Texas Code of Criminal Procedure: Title 1. Code of Criminal Procedure, Chapter 22 covers Bond Forfeiture. It states the following:

*Art. 22.02. MANNER OF TAKING A FORFEITURE. Bail bonds and personal bonds are forfeited in the following manner: The name of the defendant shall be called distinctly at the courthouse door, and if the defendant does not appear within a reasonable time after such call is made, judgment shall be entered that the State of Texas recover of the defendant the amount of money in which he is bound, and of his sureties, if any, the amount of money in which they are respectively bound, which judgment shall state that the same will be made final, **unless good cause be shown why the defendant did not appear.***

The Texas Code of Criminal Procedure gives the defendant the opportunity to show good cause for not appearing before the court before final judgment. However, issuing a warrant to arrest before final judgment would create the scenario that when arrested, and forced to act against one's will, would rob one of any opportunity to show good cause for not appearing before the court.

To the contrary, upon the entry of a judgment, it is a citation that shall be issued to notify the sureties of the defendant, which the Plaintiff is the closest to any surety in this case, at his address, that the bond has been forfeited in order to give him an opportunity to show good cause for not appearing if he has one.

*Art. 22.03. CITATION TO SURETIES. (a) **Upon entry of judgment, a citation shall issue forthwith notifying the sureties of the defendant, if any, that the bond has been forfeited, and requiring them to appear and show cause why the judgment of forfeiture should not be made final.***
   *(b) **A citation to a surety who is an individual shall be served to the individual at the address shown on the face of the bond or the last known address of the individual.***

The requirements of this citation shall be in the form provided for citations in civil cases, and should include:
   1. *a copy of the judgment of forfeiture entered by the court*
   2. *a copy of the forfeited bond*
   3. *a copy of any power of attorney attached to the forfeited bond*
   4. *and the citation to notify the parties cited to appear and show cause why the judgment of forfeiture should not be made final.*

Notice there is no instruction to issue a warrant for arrest. And none of these requirements were filed with the County Clerk or sent by the court to Plaintiff.

*Art. 22.04. REQUISITES OF CITATION. **A citation shall be sufficient if it be in the form provided for citations in civil cases** in such court; provided, however, **that a copy of the judgment of forfeiture entered by the court, a copy of the forfeited bond, and a copy of any power of attorney attached to the forfeited bond shall be attached to the citation and the citation shall notify the parties cited to appear and show cause why the judgment of forfeiture should not be made final.***

"Service of citation" and "service of process" are used interchangeably. Under the circumstances, Service of process would mean Plaintiff receive legal notice. Plaintiff represented himself, was the closest to his own surety, and filed a Forma Pauperis document (Exhibit: N). Therefore, he had no counsel, nor surety outside of himself, and thus, was entitled to notice by a process server. That is due process of law under the US constitution and the Texas Bond Forfeiture statutory code. The Court had an address to serve Plaintiff notice. An arrest warrant under these circumstances is not a lawful or legal notice.

*Art. 22.05. CITATION AS IN CIVIL ACTIONS. If service of citation is not waived under Article 22.03, **a surety is entitled to notice by service of citation, the length of time and in the manner required in civil actions; and the officer executing the citation shall return the same as in civil actions. It shall not be necessary to give notice to the defendant unless he has furnished his address on the bond,** in which event*

7

*notice to the defendant shall be deposited in the United States mail directed to the defendant at the address shown on the bond or the last known address of the defendant.*

As stated previously, Plaintiff represented himself and filed a Forma Pauperis document which had his mailing address. Therefore, under Texas Bond Forfeiture guidelines, Plaintiff was entitled to service by process, as he represented himself. He was entitled to service by process as the closest to a surety, and as a defendant he was entitled to United States mail directed to his last known address.

Time is given to answer and show cause why the defendant did not appear, and the process shall be according to civil action rules.

> *Art. 22.10. SCIRE FACIAS DOCKET. When a forfeiture has been declared upon a bond, the court or clerk shall docket the case upon the scire facias or upon the civil docket, in the name of the State of Texas, as plaintiff, and the principal and his sureties, if any, as defendants; and, except as otherwise provided by this chapter, **the proceedings had therein shall be governed by the same rules governing other civil suits.**

> *Art. 22.11. SURETIES MAY ANSWER. After the forfeiture of the bond, if the sureties, if any, have been duly notified, **the sureties, if any, may answer in writing and show cause why the defendant did not appear, which answer may be filed within the time limited for answering in other civil actions.***

> *Art. 22.125. POWERS OF THE COURT. **After a judicial declaration of forfeiture is entered, the court may proceed with the trial required by Article 22.14 of this code.** The court may exonerate the defendant and his sureties, if any, from liability on the forfeiture, remit the amount of the forfeiture, or set aside the forfeiture **ONLY AS EXPRESSLY provided by this chapter**. The court may approve any proposed settlement of the liability on the forfeiture that is agreed to by the state and by the defendant or the defendant's sureties, if any.*

Notice, the Court may act only as expressly provided by chapter 22. Nowhere in this Chapter does it give the court the authority to issue a warrant to arrest a defendant who does not appear before the court, without first notifying them through service of process or mail that they may have an opportunity to answer why they did not appear. The court has no such record filed, as it immediately issued a warrant for Plaintiff's arrest on the date that the hearing was to be held.

The Texas Code of Criminal Procedure, Title 1. Code of Criminal Procedure,

> *Art. 22.14. JUDGMENT FINAL. **When, upon a trial of the issues presented**, no sufficient cause is shown for the failure of the principal to appear, **the judgment shall be made final against him** and his sureties, if any, for the amount in which they are respectively bound; and **the same shall be collected by execution as in civil actions.** Separate executions shall issue against each party for the amount adjudged against him. The costs shall be equally divided between the sureties, if there be more than one.*

Notice these monies to be collected by the state *shall be collected by execution as in civil actions,* not by an arrest warrant, which then imprisons when executed, and forces the accused to render payment without the opportunity to show good cause for not appearing, nor the opportunity to defend himself.

Plaintiff is a private man who was exercising his constitutionally protected right of locomotion when stopped by the peace officer and could not have been committing a statutory crime under the Texas Transportation Code simultaneously with exercising a constitutionally protected right.

Under the Texas Transportation Code, which is essentially created to regulate commercial activity on the Texas roadways, officers may give a citation, however, not to one exercising their constitutionally protected common right of locomotion. Plaintiff was not and does not operate under the Texas Transportation Code and has not consented to

8

it due to conscience reasons, religiously mandated. Therefore, he was not constitutionally served through a valid service of process on any level of this process to fulfill due process of law required by the constitution. He was not served by the officer making the traffic stop, as the person making the complaint cannot serve, being a representative of the state and thus, a party to and of interest in the outcome.

*Tex. R. Civ. P. Rule 103.3 Who May Serve*
*Process—including citation and other notices, writs, orders, and other papers issued by the court—may be served anywhere…*
*(3)"…__But no person who is a party to or interested in the outcome of a suit may serve any process in that suite__,"*

And according to the *Tex. R. Civ. P.* there can be no judgment without process:

*Tex. R. Civ. P. Rule 124. No Judgment Without Service*
*"__In no case shall judgment be rendered against any defendant unless upon service, or acceptance or waiver of process, or upon an appearance by the defendant, as prescribed in these rules__…"*

The Plaintiff did not receive service nor did he appear voluntarily before the Justice court, yet he was convicted at the justice level, without the opportunity to assert his right and defend himself.

Thus Plaintiff sought redress of that decision to the Taylor County Court of Law No. 2. That court's record does not show that it attempted to serve Plaintiff after the December 17, 2021 special setting. The Plaintiff never received a notice for a rescheduled hearing or a notice that he missed a rescheduled hearing in any manner.

The Courts had no power to decide the causes or to bind the Plaintiff to any duties because the Plaintiff was never brought within the courts' jurisdiction via due Process of law under the constitution. He sought redress to the County Court with a standing challenge to both Justice and County courts' jurisdiction to bind any duty upon Plaintiff.

As stated previously the Plaintiff was exercising his personal liberty right of locomotion when he was stopped by the deputy sheriff.

*"Personal liberty -- __consists of the power of locomotion, of changing situations, of removing one's person to whatever place one's inclination may direct, without imprisonment or restraint unless by process of law__." __Bovier's Law Dictionary, 1914 ed., Black's Law Dictionary, 5th ed.__; Blackstone's Commentary 134; Hare, Constitution  Pg. 777__*

*Locomotion - __removing one's person to whatever place one's inclination may direct, without imprisonment or restraint unless by due process of law__ –*

Personal liberty is a constitutionally protected and common right which needs no license to engage in and without due process of law, which includes being brought within a court's jurisdiction by service of process, or voluntary appearance, there can be no jurisdiction. *See Pennoyer v. Neff, 95 U.S. 733, 24 L.Ed. 565.*

No legislature can create another version of due process of law, except that which was established by the founding father.

*__It is manifest that it was not left to the legislative power to enact any process which might be devised. The article is a restraint on the legislative, as well as on the executive and judicial, powers of the government, and cannot be so construed as to leave Congress free to make any process "due process of law," by its mere will.__ Murray's Lessee v. Hoboken Imp. Co., 18 How. (59 U.S.) 272, 276 (1855); French v. Barber Asphalt, 181 U.S. 324, 330 (1900).*

*__An Act of the legislature is not necessarily the "law of the land." A State cannot make anything "due process of law" which, by its own legislation__, it declares to be such. An Act of the legislature, which transfers the property of*

9

*one man to another without his consent, is not a constitutional exercise of legislative power, because, if effectual, it operates to deprive a man of his property without "due process of law." (Davidson v. New Orleans, supra, Taylor v. Porter, 4 Hill, 140 ; Rohn v. Harris, 130 Ill. 525; Ervine's Appeal, 16 Penn. St. 256; Hoke v. Henderson, 4 Dev. 1.) Burdick v. People, 36 N.E. 948, 949, 149 Ill. 600 (1894).*

*"Due process of law **does not mean merely according to the will of the legislature, or the will of some judicial or quasir judicial body upon whom it may confer authority. It means according to the law of the land, including the constitution with its guaranties and the legislative enactments and rules duly made by its authority, so far as they are consistent with constitutional limitations.** It excludes all mere arbitrary dealings with persons or property. **It excludes all interference not according to the established principles of justice, one of the most familiar of them being the right and opportunity for a hearing, to meet opposing evidence and oppose with evidence, according to the established principles of fair investigation to determine the justice of the case, before judgment affecting personal or property rights** shall be pronounced." Ekern v. McGovern, 154 Wis. 157, 142 N.W. 595, 620 (1913), cases cited.*

*"None of our liberties are to be taken away except in 'accordance with established principles; none can be forfeited except upon the finding of legal cause, after due hearing." Ibib*

Therefore the Texas Legislature's enactment of a Transportation Code does not take away one's right of locomotion.

The United States Supreme Court of Washington stated that locomotion is a common right:

*That all authorities recognize the fundamental distinction between the ordinary Right of the Citizen to use the streets in the usual way and the use of the streets as a place of business or a main instrumentality of business for private gain. The former is a common Right. State vs. City of Spokane*

According to The United States Supreme Court of Washington all authorities, including the authorities of Texas, recognize the distinction between the common right to use the road and the privilege granted to those who use it for gain.

Another Supreme Court states that to travel by automobile is not a privilege but a common right under *the right to life, liberty, and the pursuit of happiness."* These rights cannot be taken from anyone without due process.

*"The Right of the Citizen to travel upon the public highways and to transport his property thereon, either by horse drawn carriage or by automobile, is not a mere privilege which a city can prohibit or permit at will, but a common Right which he has under the right to life, liberty, and the pursuit of happiness." Thompson vs. Smith, 154 SE 579*

Under Texas Transportation Code, Sec. 521.001(6)(a)(b), it defines "license" as:
*(6) "License" means an authorization to operate a motor vehicle that is issued under or granted by the laws of this state. The term includes:*
   *(A) a driver's license;*
   *(B) the privilege of a person to operate a motor vehicle regardless of whether the person holds a driver's license;*

We can see that the State of Texas agrees that their license to operate motor vehicles under their Transportation code (commercial policy) is a privilege not a common right. Texas DMV issue licenses to operate motor vehicles under their transportation code. These licenses are issued under a legislatively enacted transportation policy and do not apply to the individual using the roadway for non-transportation activity.

Transportation is defined as:

*The removal of goods or persons from one place to another, by a carrier. Railroad Co. v. Pratt, 22 Wall. 133, 22 L.Ed. 827;*

*Interstate Commerce Com'n v. Brimson, 14 S.Ct. 1125, 154 U.S. 447, 38 L.Ed. 1047; Gloucester Ferry Co. v. Pennsylvania, 5 S.Ct. 826. 114 U.S. 196, 29 L.Ed. 158. Black's Law Dictionary 9th Ed.*

Transportation is the removal of goods or persons from one place to another, by a carrier and a carrier is one engaging in the business of transportation for a fee.

Carrier is defined as:

*An individual or organization (such as a ship owner, a railroad, or an airline) that contracts to transport passengers or goods for a fee. Black's Law Dictionary 9th Ed.*

We can see that in essence, transportation is the removal of goods or persons from one place to another, by an individual or organization that contracts to transport passengers or goods for a fee, hence, private gain.

The personal right of locomotion is a common right, not business for private gain. It is protected by the constitution and cannot be made into a crime or deprive one of. It is distinct from commercial activity, which on the other hand is a privilege which may be licensed by a state:

*"... Since the use of the streets by a common carrier in the prosecution of its business as such is not a right but a mere license of privilege." Hadfield vs. Lundin, 98 Wash 516, 662, 663*

A Citizen has a common right to travel upon the public highways by automobile and cannot be rightfully deprived of this Personal Liberty, which is the personal right of Locomotion. However, those using the highways commercially do not have a common and personal right and thus the privilege of a license to operate may be granted or withheld at will by state legislature under their police power.

*"...For while a Citizen has the Right to travel upon the public highways and to transport his property thereon, that Right does not extend to the use of the highways, either in whole or in part, as a place for private gain. For the latter purpose, no person has a vested right to use the highways of the state, but is a privilege or a license which the legislature may grant or withhold at its discretion." State vs. Johnson, 243 P. 1073; Hadfield v. Lundin, 98 Wash. 516, 657, Ann. Cas. 1918C, 942, L.R.A. 1918B, 909, 169 P. 516; Gizzardelli v. Presbrey, 44 R.I. 333, 117 A. 359; Cummins v. Jones,79 Or. 276, 155 P. 171; Memphis St. Ry. Co. v. Rapid TransitCo., 133 Tenn. 99, Ann. Cas. 1917C, 1045, L.R.A. 1916B, 1143, 179 S.W. 635; Packard v. Banton, 264 U.S. 140, 68 L. Ed. 598,44 Sup. Ct. Rep. 256, 257.*

It is obvious that there is a difference between the common right *to travel upon the public highways and to transport his property thereon, either by horse drawn carriage or by automobile (locomotion) and to use the roadways for gain.* The activity of locomotion is not a mere privilege which a city, state, legislature can prohibit by requiring license and registration or permit at will. A License comes into play when the roads of the state are being used by individuals for private gain. At this juncture it is no longer a common right but a privilege to use the roadways which a state has the right to reasonably regulate under police power, through licensing, registration, and requirement of insurance.

If one starts a commercial business and registers it, he or she would need to get permission, in the form of a license, in order to operate that business on the roads, if a state decides to.

License is defined as:

11

*"A permission, usu. revocable, to commit some act that would otherwise be unlawful; esp., an agreement (not amounting to a lease or profit a' prendre) that it is lawful for the licensee to enter the licensor's land to do some act that would otherwise be illegal, such as hunting game.* **Black's Law Dictionary** 9th *ed.*

*"The permission, by competent authority to do an act which without permission, would be illegal, (a trespass, or a tort)."* **People vs. Henderson,** *218 NW.2d 2, 4*

*"Leave to do a thing which licensor could prevent."* **Western Electric Co. vs. Pacent Reproducer Corp.,** *42 F.2d 116, 118*

A common right is not an unlawful act or it could not be a right. Therefore, there could be no reason to acquire a license (permission) in order to exercise the common right of locomotion. However, the commercial activity of transportation on the highways requires a license (permission) as it is the use of the citizens of the state's roadways for private gain.

*"Heretofore the court has held, and we think correctly, that while a Citizen has the Right to travel upon the public highways and to transport his property thereon, **that Right does not extend to the use of the highways, either in whole or in part, as a place of business for private gain. For the latter purpose no person has a vested right in the use of the highways of the state."*** **Willis vs. Buck**, 263 P. l 982; **Barney vs. Board of Railroad Commissioners**, 17 P.2d 82

*"The right of the citizen to travel upon the highway and to transport his property thereon, in the ordinary course of life and business, differs radically and obviously from that of one who makes the highway his place of business for private gain in the running of a stagecoach or omnibus. **The former is the usual and ordinary right of the Citizen, a common right to all,** while the latter is special, unusual, and extraordinary."* **State vs. City of Spokane, 186 P. 864, Ex Parte Dickey, (Dickey vs. Davis), 85 SE 781; Ex parte Dickey, 76 W. Va. 576, 85 S. E. 781, L. R. A. 1915F 840**

*"**This distinction, elementary and fundamental in character, is recognized by all the authorities**." Ibib*

Licensing requirements is not for those exercising the common right of locomotion. It is a privilege to drive on the highway for those who use it for commercial purposes. However, no special privilege of license is needed for one who does not us the highways for commercial purposes because:

*"**The right of the Citizen to travel upon the public highways and to transport his property thereon, in the ordinary course of life and business, is a common right which he has under the right to enjoy life and liberty,** to acquire and possess property, and to pursue happiness and safety. It includes the right, in so doing, to use the ordinary and usual conveyances of the day, **and under the existing modes of travel, includes the right to drive a horse drawn carriage or wagon thereon or to operate an automobile thereon, for the usual and ordinary purpose of life and business.**"* **Thompson vs. Smith**; **Teche Lines vs. Danforth, Miss.,** 12 S.2d 784

The common right of personal liberty in locomotion cannot be restricted by the legislature of any state because it is constitutionally protected.

The Supreme Court has stated:
*"Where rights secured by the Constitution are involved, there can be no rule making or legislation which would abrogate them."* **Miranda vs. Arizona,** 384 US 436, 491

*"The claim and exercise of a constitutional Right cannot be converted into a crime."* **Miller vs. U.S.,** 230 F. 486, 489

Therefore, Plaintiff's claim of exercising personal liberty- locomotion- *removing one's person to whatever place one's inclination may direct, without imprisonment or restraint unless by due process of law* – cannot be made into a crime, which is exactly what the Justice and County Courts have done to Plaintiff.

> *"There can be no sanction or penalty imposed upon one because of this exercise of constitutional Rights."*
> **Sherar vs. Cullen**, 481 F. 946

> ***Even the legislature has no power to deny to a citizen the right to travel upon the highway and transport his property in the ordinary course of his business or pleasure,*** **Chicago Motor Coach vs. Chicago**, 169 NE 22;

Sherriff Deputy Kevin Waddle issued the original citation to Plaintiff on November 11, 2020, while Plaintiff was exercising his personal right of locomotion. According to the cases stated previously the deputy had no jurisdiction to issue a statutory citation to the Plaintiff while he was exercising his constitutionally personal right of locomotion. However, the deputy refused to accept any explanation of Plaintiff's jurisdiction under original nature of as declared by the fathers, except what he assumed he had authority to do.

The jurisdiction of the Justice Court was challenged by Plaintiff on these grounds to no avail. Thus, the Plaintiff appealed to the County Court of Law No. 2 and likewise challenged the whole process, but was arrested without Due Process of Law.

## 2.  COURTS FAILED TO PROVE PERSONAL JURISDICTION
## TO BIND ANY DUTIES UPON PLAINTIFF

Courts Have No Jurisdiction To Move Beyond Jurisdictional Challenges Without First Proving Jurisdiction. Plaintiff gave the County Court jurisdiction to hear the case, but did not give the court jurisdiction to bind any statutory duties upon him.

> ***Jurisdiction is a power constitutionally conferred upon a judge or magistrate to take cognizance of and determine causes according to law, and to carry his sentence into execution***. *U.S. v. Arredondo, 6 Pet. 691, 8 L. Ed. 547; Yates v. Lansing, 9 Johns. (N. Y.) 413, 6 Am. Dec. 290; Johnson v. Jones, 2 Neb. 135.*

Religious government, doctrine, faith, and matters of conscience are exempt from the cognizance of the court.

In TV Azteca, S.A.B. De C.V., Patricia Chapoy, And Publimax, S.A. De C.V. V Gloria De Los Angeles Trevino Ruiz, et al. The Supreme Court of Texas stated that**: *A court has power to decide a case only if it has "both subject matter jurisdiction over the controversy and personal jurisdiction over the parties."* Spir Star AG v. Kimich, 310 S.W.3d 868, 871 (Tex. 2010). *Subject matter jurisdiction involves a court's "power to hear a particular type of suit," while personal jurisdiction "concerns the court's power to bind a particular person or party."* CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996).

As stated, Plaintiff was exercising his common right of locomotion on the roadways when he was issued a criminal citation for exercising that right. He challenged the Justice Court of Judge Robert Jones' jurisdiction, however, the judge forced a bench trial and Plaintiff was not heard, yet he was convicted. Pursuing justice, Plaintiff appealed to the County Court of Judge Harriet Haag stating the lack of personal and subject matter jurisdiction of the justice court, which both courts ignored. The Justice court proceeded with a bench trial without proving any Jurisdiction and the County Court issued a warrant for Plaintiff's arrest without proving its jurisdiction to bind the Plaintiff, without notifying Plaintiff of a rescheduled court date, without a hearing, and under duress, forced Plaintiff to waive trial, and plead no contest (Exhibit: G).

13

## Courts Must Prove Jurisdiction

Jurisdiction is a matter between a Petitioner of the challenge and the court. It is the court that has made a demand of a Respondent to stand and answer a criminal charge and, therefore, it is the court that must prove its authority to rule and make said demands pursuant *5 USC 556(d)*, stating:

>*"the proponent of a rule or order has the burden of proof."*

Also see <u>Melo v. US, 505 F2d 1026</u>.

>**"Once jurisdiction is challenged, the court cannot proceed when it clearly appears that the court lacks jurisdiction, the court has no authority to reach merits, but, rather, should dismiss the action."**

As stated previously, Plaintiff did not give the County Court personal jurisdiction to bind him, yet the court issued an unlawful warrant for Plaintiff's arrest. The County Court failed to notify Plaintiff of a court date by which he could challenge the jurisdiction of the court by oral and documentary evidence for a full and true disclosure of the facts while asserting his rights. The fact that the Court claimed that a court date was missed by Plaintiff is reason to issue a Service of Citation or mail a notice to Plaintiff; yet the Court moved to have Plaintiff imprisoned against his will until he furnished a ransom for his release, as well as, fraudulently having him sign documents to waive his constitutionally protected rights, which he would have never consented to outside of being compelled while under duress.

>***Waivers of constitutional rights not only must be voluntary**, but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences. **Brady v. United States, 397 U.S. 742, 748 (1970)***

>*"A defendant who enters such a plea simultaneously waives several constitutional rights, including his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers. **For this waiver to be valid under the Due Process Clause, it must be 'an intentional relinquishment or abandonment of a known right or privilege.'** Johnson v. Zerbst, <u>304 U. S. 458</u>, <u>304 U. S. 464</u> (1938). Consequently, **if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void.** Boykin v. Alabama, <u>395 U.S. 238</u> (1969)*

>*Ignorance, incomprehension, **coercion**, terror, **inducements, subtle or blatant threats might be a perfect cover-up of unconstitutionality**. The question of **an effective waiver of a federal constitutional right in a proceeding is, of course, governed by federal standards**. Douglas v. Alabama, <u>380 U. S. 415, 380 U. S. 422</u>.*

5 U.S. Code § 556 (d):

>*"... **the proponent of a rule or order has the burden of proof.** Any oral or documentary evidence may be received, but **the agency as a matter of policy shall provide for the exclusion of irrelevant, immaterial, or unduly repetitious evidence. A sanction may not be imposed or rule or order issued except on consideration of the whole record or those parts thereof cited by a party and supported by and in accordance with the reliable, probative, and substantial evidence... A party is entitled to present his case or defense by oral or documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts**..."*

Plaintiff challenged both court's jurisdiction to bind any duties on him. Neither court heard him, neither court proved their jurisdiction, and both courts bound him to statutory duties.

14

### 3. DEPRIVATION OF RIGHT TO RELIGIOUS PRACTICE, EXPRESSION, AND CONSCIENCE

The County Court received documentation which supported Plaintiff's, religious beliefs, religious practice, and that his actions are based upon matters of conscience, and personal right of locomotion, not crimes, according to standing law.

In the case of Trustees of The New Life in Christ Church *V. City of Fredericksburg, Virginia, Decided January 18, 2022, Justice Gorsuch of the Supreme Court of the United States wrote:

> *"**The Framers of our Constitution were acutely aware how governments in Europe had sought to control and manipulate religious practices and churches. They resolved that America would be different. In this country, we would not subscribe to the "arrogant pretension" that secular officials may serve as "competent Judge[s] of Religious truth."** Memorial and Remonstrance Against Religious Assessments, in Selected Writings of James Madison 21, 24 (R. Ketcham ed. 2006). **Instead, religious persons would enjoy the right "to decide for themselves, free from state interference, matters of . . . faith and doctrine**." Kedroff v. Saint Nicholas Cathedral of Russian Orthodox Church in North America, 344 U. S. 94, 116 (1952). This case may be a small one, and one can hope that the error here is so obvious it is unlikely to be repeated anytime soon."*

One of the Authorities which Justice Gorsuch cited was *"Memorial and Remonstrance Against Religious Assessments, in Selected Writings of James Madison".* That Authority also states that:

> ***It is the duty** of every man to render to the Creator such homage and **such only as he believes to be acceptable to him. This duty is precedent,** both in order of time and **in degree of obligation, to the claims of Civil Society (At 1).***

And...

> *"...much more must every man who becomes a member of any particular Civil Society, **do it with a saving of his allegiance to the Universal Sovereign. We maintain therefore that in matters of Religion, no man's right is abridged by the institution of Civil Society and that Religion is wholly (100%) exempt from its cognizance." Emphasis added. Ibib.***

Among Black's Law Dictionary, 9th ed's definition of *"cognizance"* are:

1. ***A court's right and power to try and to determine cases; Jurisdiction.***
2. ***The taking of judicial or authoritative notice.***
3. ***Acknowledgment or admission of an alleged fact;*** *esp. (hist.),* ***acknowledgment of a fine.***

The Pennsylvania Supreme Court has also defined "cognizance":
> *The context shows that " **cognizance** " is used in the sense of " **the right to take notice of and determine a cause." County of Clarion v. Western Pennsylvania Hospital for the Insane, 111 Pa. 339 (1886).***

The United States Supreme Court has consistently held that what is permissible and impermissible in regard to religion is what reflects the understanding of the Founding Fathers:

> *I believe that **the line we must draw between the permissible and the impermissible is one which accords with history and faithfully reflects the understanding of the Founding Fathers. It is a line which the Court has consistently sought to mark** in its decisions expounding the religious guarantees of the First Amendment.* ***Abington School Dist. v. Schempp, 374 U. S. 203, 374 U. S. 230 (1963).***

15

The understanding of the Founding Fathers was that in matters of Religion, no man's right is abridged by the institution of Civil Society and that Religion is wholly (100%) exempt from its cognizance (jurisdiction). In line with the understanding of the founding father Madison, other courts have stated the reason why unincorporated religious societies are exempt from the jurisdiction of secular courts and the societies they are members of:

*The laws of nature are the laws of God; whose authority can be superseded by no power on earth. A legislature must not obstruct our obedience to him from whose punishments they cannot protect us. All human constitutions which contradict his laws, we are in conscience bound to disobey. Such have been the adjudications of our courts of justice. Robin v. Hardaway (1772)*

Respondent chose to follow the natural law of the Universal Sovereign and has not consented to be governed by the civil political society.

*That the majority shall prevail is a rule posterior to the formation of government, and results from it. It is not a rule binding upon mankind in their natural state. There, every man is independent of all laws, except those prescribed by nature (Laws of God). He is not bound by any institutions formed by his fellowmen without his consent. Cruden v. Neale (May Term, 1796.) Emphasis added.*

Within the dictates of conscience, duty to the Universal Sovereign has always been regarded by the various constitutions and Courts as the highest duty, even higher duty than to the state.

*"in the forum of conscience, duty to a moral power higher than the state has always been maintained."* **United States v. Seeger, 380 U.S. 163, 171 (1965)**

*"both morals and sound policy require that the state should not violate the conscience of the individual. All our history gives confirmation to the view that liberty of conscience has a moral and social value which makes it worthy of preservation at the hands of the state. Ibib.*

*Indeed, the consensus of the witnesses appearing before the congressional committees was that individual belief -- rather than membership in a church or sect -- determined the duties that God imposed upon a person in his everyday conduct, and that "there is a higher loyalty than loyalty to this country, loyalty to God." Ibib.*

*"religious training and belief," which Congress has defined as "belief in a relation to a Supreme Being involving duties superior to those arising from any human relation." Ibib.*

In their contract with government, the people of Texas have secured this right of *Freedom of Worship* for the Plaintiff.

*All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences... No human authority ought, in any case whatever, to control or interfere with the rights of conscience in matters of religion The Texas Constitution, Art.1, Sec. 6. Freedom of Worship*

Therefore, the legislature cannot create a law which denies anyone of these personal rights to act according to conscience. Madison goes on to state, in accords with history and what faithfully reflects the understanding of the Founding Fathers:

*"Because if Religion (unincorporated, religion not sponsored by the state) be exempt from the authority of the Society at large, still less can it be subject to that of the Legislative Body. The latter are but the creatures and vicegerents of the former. Their jurisdiction is both derivative and limited: it is limited with*

16

*regard to the co-ordinate departments, more necessarily is it limited with regard to the constituents. Memorial and Remonstrance Against Religious Assessments, in Selected Writings of James Madison at (2). **Emphasis added.***

Samuel Adams was also one of the founding fathers alongside Madison. He wrote the following:

> **_All men have a right_** *to remain in a state of nature **as long as they please**; and in case of intolerable oppression, civil or religious, **to leave the society they belong to, and enter into another**. When **men enter into society, it is by voluntary consent**; and they have a right to demand and insist upon the performance of such conditions and previous limitations as form an equitable original compact. **Every natural right not expressly given up, or, from the nature of a social compact, necessarily ceded, remains**. Samuel Adams, The Rights of the Colonists The Report of the Committee of Correspondence to the Boston Town Meeting, Nov. 20, 1772, Page 417.*

As stated previously of Madison, the retention of his allegiance to the Universal Sovereign above civil society is the natural right of Plaintiff which he has never given up.

> *"...much more must every man who becomes a member of any particular Civil Society, **do it with a saving of his allegiance to the Universal Sovereign. We maintain therefore that in matters of Religion, no man's right is abridged by the institution of Civil Society and that Religion is wholly (100%) exempt from its cognizance."** Emphasis added. Ibib.*

The Declaration of Independence is also history which faithfully reflects the understanding of the Founding Fathers. It unequivocally states:

> *When in the Course of human Events, **it becomes necessary for one People to dissolve the Political Bands which have connected them with another, and to assume among the Powers of the Earth, the separate and equal Station to which the Laws of Nature and of Nature's God entitle them**, a decent Respect to the Opinions of Mankind requires that **they should declare the causes which impel them to the separation.**"*

The Declaration of Independence also states:

> *"That whenever any Form of Government becomes destructive of these ends (securing the inalienable rights endowed upon the people by their Creator), it is the Right of the People to alter or to abolish it, and to institute new government..."*

The history which faithfully reflects the understanding of the Founding Fathers clearly allows the Respondent to retain his allegiance to the Universal Sovereign above civil society.

Plaintiff's religious doctrine prohibits him from accepting privileges, entitlements, or benefits from secular governments. Children of the religious society are educated by programs of the society, they are not sent to public school. We do not accept public assistance of any form. We are not adversaries of secular government however we simply keep the commands of our Heavenly Father as we know it, and consequently must be governed separately from secular government (See 2 Corinthians 6:17-18; Revelation 18:3-4; Isaiah 52:11; Jeremiah 51:6; Ezra 6:21).

As such, he cannot accept the State of Texas Corporation's licensing scheme as it is a privilege. Therefore, as a matter of conscience, religious belief, and expression, Plaintiff must maintain his constitutionally protected right of locomotion, which is a common right under life, liberty, and the pursuit of happiness, not a privilege. *See Thompson vs. Smith, 154 SE 579.*

17

**Amendment I**

*"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof."*

**In Congress, July 4, 1776 The unanimous Declaration of the thirteen united States of America,**

*"all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness…"*

Plaintiff has a right to peacefully express his religious beliefs and to adhere to ecclesiastical directives. Black's Law Dictionary 4th ed. defines "ecclesiastical" as:

*Pertaining to anything belonging to or set apart for the church, as distinguished from "civil" or "secular," with regard to the world.*

Plaintiff has sent documentation that the religious body he is a member of requires a separation from secular statutes if they are not in unity with the natural law and justice of the Supreme Creator and the ideals of which this nation was founded upon.

The founding fathers recognized the right of the religious body, of which Plaintiff's belongs, to separate themselves from secular governments and to be free from state interference, as long as it does not infringe upon the rights of secular society.

One of the authorities Justice Gorsuch quoted was *Memorial and Remonstrance Against Religious Assessments, in Selected Writings of James Madison.* That authority also states the following:

This right is also recognized by higher courts of this land:

*It is declared in the Constitution, that "**no human authority can, in any case, control or interfere with the rights of conscience.**" But what are those rights? **Simply a right to worship the Supreme Being according to the dictates of the heart; to adopt any creed or hold any opinion whatever on the subject of religion; and to do, or forbear to do, any act for conscience sake,** the doing or forbearing of which, is not prejudicial to the public weal. **Commonwealth v. Lesher, 17 Serg. & Rawle 155, 160 (1828)**

The founder father Samuel Adams has also stated that whether a man lives in a state of civil society or not, he has this right:
*As neither reason requires nor religion permits the contrary, **every man living in or out of a state of civil society has a right peaceably and quietly to worship God according to the dictates of his conscience.** **Samuel Adams, The Rights of the Colonists The Report of the Committee of Correspondence to the Boston Town Meeting, Nov. 20, 1772, Page 417.***

The founding fathers of this nation understood what interference with the peaceful and quit way one served the Creator was like and intended to set up a nation free of government interference with religion, especially when it came to the matters of conscience.

*The fathers of this country were familiar with persecution of this character; and **one of their chief purposes in leaving friends and kindred and settling here was to establish a nation in which every man might worship God in accordance with the dictates of his own conscience and without interference from those who might not agree with him. The religious freedom guaranteed by the 1st and 14th Amendments means that he shall have the right to do this, whether his belief is reasonable or not, without interference from***

18

*anyone, so long as his action or refusal to act is not directly harmful to the society of which he forms a part. Barnette v. West Virginia State Board of Ed., 47 F. Supp. 251,253 (S.D.W. Va. 1942)*

It is also long been lawfully recognized in the supreme courts of the United States of America

> *Under our constitutional provisions, both State and Federal, **the right to adopt, profess, entertain, or advocate any religious views, or to fail or refuse so to do, is unlimited, and cannot be controlled by any law. There is no authority under our system of jurisprudence to alter, modify, or infringe upon this right;** as **a person's sentiments and opinions upon this subject are controlled entirely by his own judgment and conscience**. The courts will ever guard the right to a full and unlimited exercise of one's religious beliefs. **The slightest encroachment upon this right would be but the beginning of a vanished liberty,** and after death its grave would bear an epitaph recording its loss as **due to the courts being recreant (disloyal to their duty, or cause) in their duty**. Jones v. City of Moultrie, 27 S.E.2d 39 at 530 (Ga. 1943) emphasis added.*

> *Mere legislative preferences or beliefs respecting matters of public convenience may well support regulation directed at other personal activities, but **be insufficient to justify such as diminishes the exercise of rights so vital to the maintenance of democratic institutions.** Barnette v. West Virginia State Board of Ed., 47 F. Supp. 251,254 (S.D.W. Va. 1942)*

The authority of the Defendants in their official capacity comes from state legislators, which means their authority *cannot control* rights and is *insufficient to justify diminishing the exercise of rights and alter, modify, or infringe upon them,* if they do, they are being *disloyal to their duty, or cause.*

As stated earlier, the founding father Samuel Adams also stated that *all men,* when *entering into society, does it by voluntary consent.* The founding fathers recognized that outside of consenting to be governed, the people had natural rights endowed to them by powers greater than mankind. This was an essential part of the Declaration of Independence, which expresses the ideals on which the United States was founded and the reasons and justification for separation from Great Britain. This document stands on its own and has never been changed. It established and outlined the manner in which the founding fathers thought respectful for one to declare separation from secular society.

Based upon the foregoing and following statements the Plaintiff has entered into an absolute covenant/contract with his Creator through his religious affiliation and believes that he has been commanded to be governed separately from secular ideologies and functionalities, which strives against the Creator's laws, including those of governments, as a matter of conscience and ecclesiastical doctrine according to the following:

> יהוה *shall establish you as a holy people unto himself, as he has sworn unto you, if you will keep the commandments of* יהוה *your Father, and walk in his ways. Deuteronomy 28:9*

According to Plaintiff's belief and conscience, it is plain to see that for Plaintiff to be holy to his Heavenly Father it is conditional on following the instructions to keep the commandments of his Creator, and living in accordance with His ways.

> *For I am* יהוה *your Father; consecrate yourselves, therefore, and **be holy, because I am holy**... For I am* יהוה*, who brought you up out of the land of Egypt **so that I would be your Father; therefore be holy, because I am holy.** Leviticus 11:44-45*

According to Plaintiff's belief and conscience, holiness by its nature implies being separated to the One who founded and commands holiness. In Leviticus 20:24, 26 it is written:

19

*"...I am יהוה your Father, **who has set you apart from the peoples**... **You are to be holy to Me** because I, יהוה, am holy, and I have set you apart from the nations to be My own*.

According to Plaintiff's belief and conscience, not only is plaintiff commanded to be set apart from secular people and nations, but this is done in order for him to become the possession of his Heavenly Father.

Merriam-Webster Dictionary *(https://www.merriam-webster.com/dictionary/ holy)* defines *"holy"* as: "*devoted entirely to the deity or the work of the deity."*

It is then fair to say *"holy"* means to be set apart for a sacred use, and to be set apart means to be separated. In order to fulfill this command and what he believes as a matter of conscience, Plaintiff is required, as one under the trusteeship of his religious society and under mandate from his Heavenly Father, to not enter into any compacts with, nor accept any entitlements, privileges, or benefits from any global, national, state, or local secular governments, including applying for driver's license which is a privilege of the state. See *Texas Transportation Code, Sec. 521.001(6)(a)(b)*.

His Heavenly Father has stated to make no agreements with the people of the land, which the Plaintiff interprets as including applying for entitlements, privileges, and/or benefits from secular governments, which fosters agreements:

"*make no covenant with them or with their gods.*" **Exodus 23:32**

"*Be careful not to make a covenant with the inhabitants of the land you are entering, lest they become a snare in your midst.*" **Exodus 34:12**

"*do not make a covenant with the inhabitants of the land, for when they prostitute themselves to their gods and sacrifice to them, they will invite you, and you will Partake of their sacrifices.*" **Exodus 34:15**

"*you are not to make a covenant with the people of this land...*" **Judges 2:2**

Not only is it a matter of conscience for Plaintiff to be *set you apart (separate) and devoted entirely to the work of* יהוה, and not enter into any agreements with secular governments, He believes he is also commanded by his Creator to be separate in order to be received by his Heavenly Father:

1.  "*Therefore come out from among them and be separate, says the Creator. Touch nothing that's a mixture of good and evil, and I will receive you.*" *2 Corinthians 6:17-18*
2.  *"Come out of her, my people, so that you will not share in her sins or contract any of her plagues." Revelation 18:3-4*
3.  *"Depart, depart, go out from there! Touch no polluted thing; come out from it, purify yourselves, you who carry the vessels (body corporate) of the Supreme Creator." Isaiah 52:11*
4.  *"Flee out of the midst of Babylon, and deliver every man his soul: be not cut off in her iniquity." Jeremiah 51:6*
5.  *"all such as had separated themselves unto them from the filthiness of the people of the land, to seek the Father of Israel, did eat…" Ezra 6:21*

One may say: *"That was then for another people and time."* However, our faith declares, it is written that:

"*all these things happened to them as examples, and they were written for our admonition, upon whom the ends of the ages have come." 1 Corinthians 10:11*

The Texas Constitution Article 1, Sec. 16 states the following:

*No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made.*

The actions of the Defendants deprived Plaintiff of his covenantal obligations with his Creator, and interfered with him living according to his conscience which is his freedom of religious expression as long as he does not infringe upon the rights of the Defendants.

The founding Fathers documented that one could:

> *1. Dissolve the political bands which have connected them with another society; in this case the state.*
> *2. Assume among the powers of the earth, the separate and equal station to which the Laws of Nature and of Nature's God entitle them, (notice that Laws of Nature and of Nature's Creator entitles them to separate if they so choose) and,*
> *3. That the decent requirement is that they should declare the causes which impel them to the separation:*

Plaintiff gave to the Justice Court of Robert Jones, and the Justice Court forwarded to the County Court of Ms. Harriet Haag documents in regard to Plaintiff's lawful religious status, his actions based on conscience, and his actions are supported by the law of the land (See documents within Exhibit: C, marked Exhibit: A and Exhibit: B).

No government official is above the law of the land.

> *"**No state, legislator, executive or judicial officer can "War" against (or test the limitations of) the Constitution without violating their undertaking to support it.** The Constitution created a government dedicated to equal justice under law. The Fourteenth Amendment embodied and emphasized that ideal…no State shall deny to any person within its jurisdiction the equal protection of the laws. **Our constitutional ideal of equal justice under law is thus made a living truth.**"* (Book, Our Nation's Archive © 1999 pg 701) ***Cooper v. Aaron, By Chief Justice Earl Warren***

> *"Insofar as a statute runs counter to the fundamental law of the land, (constitution) it is superseded thereby."* ***16 Am Jur 2d 177, Late Am Jur 2d. 256***

The Texas Constitution, Article 1. Bill of Rights, Sec. 6. Freedom Of Worship, States:

> *"**No human authority ought, in any case whatever, to control or interfere with the rights of conscience in matters of religion**"*

Merriam Webster's Dictionary since 1828 (https://www.merriam-webster.com/dictionary/whatever) Definition of '*whatever*', as in *"No human authority ought, in any case whatever"* is:
> *"**no matter what**"*

The Cambridge Dictionary (https://dictionary.cambridge.org/dictionary/english/whatever) Definition of *whatever is:*
> *"**it is not important what is; it makes no difference what (is)**"*

The Britannica Dictionary (https://www.britannica.com/dictionary/whatever) Definition of *whatever is:*
> *"**no matter what : regardless of what**"*

The Defendants are clearly considered as human authority and the Texas constitution explicitly stated that *"No human authority ought, in any case whatever (no matter what; regardless of what)**, to control or interfere with the rights of conscience in matters of religion**"*. Yet the County Court under Judge Haag and the prosecutor, interfered with Plaintiff's rights of conscience in matters of religion. The Court did not have authority to nor did it prove its personal jurisdiction to bind any duty upon the Plaintiff, yet issued an illegal warrant for Plaintiff's arrest while Plaintiff while exercising his religious and constitutionally protected right to not enter into any agreements with secular governments. Defendants' actions substantially burdened Plaintiff's free exercise of religion and interfered with his rights of conscience regarding the exercise of his religion.

Black's Law Dictionary 4th ed. defines capacity as:

*"the attribute of persons which enables them to perform civil or juristic acts."* Sargent v. Burdett, 96 Ga. 111, 22 S.E. 667; 2 Com.Dig. 294.

Not only did the Defendants act outside of their capacity by violating Due Process of Law rights, by ignoring challenges to their jurisdiction, and depriving the religious expression of Plaintiff, they also violated the declared decrees set out in the Declaration of Independence, the US Constitution, and the Texas Constitution, their own law, which allow Religious bodies to set up ecclesiastical government separate and without the state. The Defendants' actions resulted in the court's issuing an unlawful warrant, which subsequently resulted in the imprisonment of Plaintiff, and him being forced under duress to pay monies, which is the taking of Plaintiff's personal property without due process.

The word *"property"* is defined as:

*The word is also commonly used to denote* **everything which is the subject of ownership, corporeal or incorporeal, tangible or intangible, visible or invisible, real or personal; everything that has an exchangeable value or which goes to make up wealth or estate.** *It extends to every species of valuable right and interest, and* **includes real and personal property**, *easements, franchises, and incorporeal hereditaments.* **Samet v. Farmers' & Merchants' Nat. Bank of Baltimore, C.C.A.Md., 247 F. 669, 671; Globe Indemnity Co. v. Bruce, C.C.A. Okl., 81 F.2d 143, 150**

*In reference to the infliction of punishment and divesting of the rights of property, it has been repeatedly held in this State, and it is believed,* **in every other of the Union**, *that there are limitations upon the legislative power, notwithstanding those words; and that the clause itself means that such legislative acts, as profess in themselves* **directly to punish persons or to deprive the citizen of his property, without trial before the judicial tribunals, and a decision upon the matter of right, as determined by the laws under which it vested, according to the course, mode and usages of the common law as derived from our fore-fathers**, *are* **not effectually laws of the land**,*" for those purposes.* **Hoke v. Henderson, 15 N.C. 1, 4 Dev. 1 (1833)**

### 4. NO JUDICIAL IMMUNITY FOR JUDGES WHO ACTS OUTSIDE THEIR CAPACITY

Various Supreme Courts' rulings have proven that judicial immunity is not absolute. Judicial immunity is lost when a judge acts outside of his or her jurisdiction when clear evidence of lack of jurisdiction is present.

**When a judge knows that he lacks jurisdiction, or acts in the face of clearly valid statutes expressly depriving him of jurisdiction, judicial immunity is lost**. *Rankin v. Howard, (1980) 633 F.2d 844, cert den. Zeller v. Rankin, 101 S.Ct. 2020, 451 U.S. 939. 68 L.Ed 2d 326.*

**Indeed, when the limits of legitimate authority are wholly abandoned, the judge's act may cease to be "judicial."** *See, e. g., Lopez v. Vanderwater, 620 F.2d 1229, 1235 (7th Cir.1980)*

**judge's prosecutorial acts were nonjudicial; no immunity for such acts**; *Gregory v. Thompson, 500 F.2d 59, 64 (9th Cir.1974)*

*...the District Court held that no federal action would lie against any of the defendants because the Circuit Judge, the only state agent, was absolutely immune from suit under the doctrine of judicial immunity. The Court of Appeals reversed, holding that the "crucial issue" was* **whether the Circuit Judge acted within his jurisdiction, that he had not, that, accordingly, he was not immune from damages liability, and that, in any event, he had forfeited his immunity "because of his failure to comply with elementary principles of procedural due process.**
*" Stump v. Sparkman, id., 435 U.S. 349 (1978).*

*The Stump Court identified two specific factors to be considered in determining whether an act is "judicial": "the nature of the act itself, i.e., whether it is a function normally performed by a judge, and ... the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." 435 U.S. at 362, 98 S.Ct. at 1107.*

*A judge… will be subject to liability only when he has acted in the "clear absence of all jurisdiction," Bradley v. Fisher, 13 Wall. 335, 80 U. S. 351. Pp. 435 U. S. 355-357.*

*In order to claim immunity from civil action for his acts, it is generally necessary that a judge be acting within his jurisdiction as to subject matter and person. Davis v. Burris, 75 P.2d 689 (Ariz. 1938)*

*No man (or woman) in this country is so high that he is above the law. No officer of the law may set that law at defiance with impunity. All the officers of the government, from the highest to the lowest, are creatures of the law and are bound to obey it. It is the only supreme power in our system of government, and every man who by accepting office participates in its functions is only the more strongly bound to submit to that supremacy and to observe the limitations which it imposes upon the exercise of the authority which it gives. United States v. Lee, 106 U.S. 196 (1882) (Emphasis added)*

It is the duty of every judge, including Judge Haag, to secure the rights of the people by being watchful against any stealthy encroachments thereon.

*"It is the duty of the courts to be watchful for the Constitutional rights of the citizen and against any stealthy encroachments thereon." Boyd vs. United States, 116 US 616*

*We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness.--That to secure these (Unalienable) rights, Governments are instituted among Men, deriving their just powers from the consent of the governed. In Congress, July 4, 1776 The unanimous Declaration of the thirteen united States of America,*

As it is plain to see, the only duty that government received from the people is to protect the unalienable rights of the people.

It is clear that under its own state's statutes the justice system has erred throughout these proceedings. The Texas Code of Judicial Conduct states the following:

*Preamble*

*Our legal system is based on the principle that an independent, fair and competent judiciary will interpret and apply the laws that govern us. The role of the judiciary is central to American concepts of justice and the rule of law. Intrinsic to all sections of this Code of Judicial Conduct are the precepts that judges, individually and collectively, must respect and honor the judicial office as a public trust and strive to enhance and maintain confidence in our legal system. The judge is an arbiter of facts and law for the resolution of disputes and a highly visible symbol of government under the rule of law.*

*Canon 2: Avoiding Impropriety and the Appearance of Impropriety in All of the Judge's Activities*

*A. A judge shall comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.*

*B. **A judge shall not allow any relationship to influence judicial conduct or judgment.** A judge shall not lend the prestige of judicial office to advance the private interests of the judge or others; nor shall a judge convey or permit others to convey the impression that they are in a special position to influence the judge.*

## Canon 3: Performing the Duties of Judicial Office Impartially and Diligently

A.   ***Judicial Duties in General.*** *The judicial duties of a judge take precedence over all the judge's other activities. **Judicial duties include all the duties of the judge's office prescribed by law***

B.   *(8) **A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law.***
     *(9) **A judge should dispose of all judicial matters promptly, efficiently and fairly**.*

## II.    FACTUAL ALLEGATIONS:

### Elements for Establishing this Claim

*The Constitution of the United States, within its limited sphere is the supreme law of the land; and **it is the duty of all officials, whether legislative, judicial, executive, administrative. or ministerial, to so perform every official act as not to violate the constitutional provisions.***

***The duty rests upon all courts, state and national, to guard, protect, and enforce every right granted or secured by the Constitution of the United States, whenever such rights are involved in any proceeding before the court and the right is duly and properly claimed or asserted**. Montgomery v. State.45 So. 879,55 Fla. 97*

United States law allows an individual who believes that his or her constitutionally protected rights have been violated to bring a civil action against the government or official to recover the damages sustained as a result of that violation. Specifically, 42 USC §1983, 42 USC §1985, 42 USC §1986:

"***provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws by any person acting under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory.***" *Gomez v Toledo*, 446 US 635, 638 (1980) (internal quotations omitted). This statute, enacted to aid in "***the preservation of human liberty and human rights,***'" *Owen v. City of Independence, 445 U. S. 622, 445 U. S. 636 (1980), quoting Cong.Globe, 42d Cong., 1st Sess., App. 68*

*The Federal Courts Improvement Act (FCIA); Pub. L. No. 104-317, 110 Stat. 3847 (1996), which amended section 1983 to provide that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless **a declaratory decree was violated** or declaratory relief was unavailable."*

A declaratory decree is: *A binding adjudication that establishes the rights and other legal relations of the parties without providing for or ordering enforcement*. See Black's Law Dictionary 9th ed.

The Plaintiff believes that various declared decrees set out in the Declaration of Independence, the US Constitution, the Texas Constitution, and other regulations were violated by Defendants.

### COUNT 1 – DEFENDANTS DEPRIVED PLAINTIFF OF EQUAL PROTECTION OF THE LAWS

*No right granted or secured by the Constitution of the United States can be impaired or destroyed by a state enactment, whatever may be the source from which the power to pass such enactment may have been derived... if, by their necessary operation, its regulations looking to either of those ends amount to a denial*

*to persons within its jurisdiction of the equal protection of the laws, they must be deemed unconstitutional and void. Gibbons v. Ogden, 9 Wheat. 1, 22 U. S. 210; Sinnot v. Davenport, 22 How. 227, 63 U. S. 243; Missouri, Kansas & Texas Railway v. Haber, 169 U. S. 613, 169 U. S. 626.* **Connolly vs. Union Sewer Pipe Co.,** *184 US 540*

The law affords for an individual to challenge the jurisdiction of the court over the person. Yet, Plaintiff was denied that right by the courts in violation of his right to have equal protection of the laws throughout this process. Plaintiff was also denied the opportunity to assert his right to be heard and to provide every material fact relevant to the charges against him by the justice court and Defendants.

Plaintiff incorporates the previous argument and following paragraphs by reference herein.

1. Plaintiff was not given the opportunity to have the right of controverting, by proof, every material fact which bears on the question of right before the Court.
2. The Defendants interfered with Plaintiff's right to equal protection of the laws when Plaintiff was denied the opportunity to challenge the Court's personal jurisdiction over Plaintiff.
3. The Defendants interfered with Plaintiff's right to equal protection of the laws when the Defendants issued a warrant for Plaintiff's arrest, without giving an opportunity to appear before the court, which subsequently led to his arrest and effectively denying Plaintiff of his constitutionally protected right of equal protection of law.
4. Defendants denied Plaintiff of equal protection of law by refusing Plaintiff the opportunity to challenge Court's jurisdiction over Plaintiff and denying Plaintiff of his constitutionally protected right to present his case.
5. Defendants' conduct under color of law, either in their individual acts or contribution to this abusive environment, caused Plaintiff to be denied equal protection of the laws.
6. The Defendants ignored procedural and substantive requirements in an unlawful de facto campaign which denied Plaintiff equal protection of the laws.
7. Defendants' actions intentionally and willfully deprived Plaintiff of equal protection of the laws without due process of law and without recourse for the arbitrary conduct of Defendants.
8. Defendants' actions proximately caused damages to Plaintiff as previously alleged.
9. As government agents Defendants should have known their duties were to protect the constitutionally protected unalienable rights of Plaintiff and if they knew, they acted willfully, knowingly and/or purposefully, and with deliberate indifference to deprive Plaintiff of his constitutionally protected rights of equal protection of the laws. Due to the nature of Defendants' conduct, Plaintiff is entitled to recover damages against the individual Defendants.

## COUNT 2 – DEFENDANTS FAILED TO PROTECT PLAINTIFF'S RIGHT TO EQUAL PROTECTION OF THE LAWS

*The individual may stand upon his Constitutional Rights as a Citizen. He is entitled to carry on his private business in his own way. His power to contract is unlimited. He owes no duty to the State or to his neighbors to divulge his business, or to open his doors to investigation, so far as it may tend to incriminate him. He owes no such duty to the State, since he receives nothing there from, beyond the protection of his life, liberty, and property. His Rights are such as the law of the land long antecedent to the organization of the state, and can only be taken from him by due process of law, and in accordance with the Constitution. Among his Rights are the refusal to incriminate himself, and the immunity of himself and his property from arrest or seizure except under warrant of law. He owes nothing to the public so long as he does not trespass upon their rights.* **Hale vs. Hinkel,** *201 US 43, 74-75.*

The law affords for an individual to challenge the jurisdiction of the court over the person. Yet, Plaintiff was denied that right by the courts in violation of his right to have equal protection of the laws throughout the process. Plaintiff was also denied the opportunity to assert his right and show evidence to prove his case by the justice court and Defendants.

Plaintiff incorporates the previous argument and following paragraphs by reference herein.

1. Plaintiff was not given the opportunity to have the right of controverting, by proof, every material fact which bears on the question of right before the Court.
2. The Defendants failed to protect Plaintiff's right to equal protection of the laws when Plaintiff was denied the opportunity to challenge the Court's jurisdiction over Plaintiff and assert his right.
3. The Defendants failed to protect Plaintiff's right to equal protection of the laws when the Defendants issued a warrant for Plaintiff's arrest, without giving opportunity to appear before the court, which subsequently led to his arrest and effectively denying Plaintiff of his constitutionally protected right of equal protection of law.
4. Defendants failed to protect Plaintiff's right to equal protection of law by refusing Plaintiff the opportunity to challenge Court's jurisdiction over Plaintiff and denying Plaintiff of his constitutionally protected right to present his case.
5. Defendants' failed to protect Plaintiff's right to equal protection of law by their conduct under color of law, either in their individual acts or contribution to this abusive environment, caused Plaintiff to be denied equal protection of the law.
6. The Defendants failed to protect Plaintiff's right to equal protection of law when they ignored procedural and substantive requirements in an unlawful de facto campaign which denied Plaintiff equal protection of the laws.
7. Defendants' actions intentionally and willfully deprived Plaintiff of equal protection of the laws without due process of law and without recourse for the arbitrary conduct of Defendants.
8. Defendants' actions proximately caused damages to Plaintiff as previously alleged.
9. As government agents Defendants should have known their duties were to protect the constitutionally protected unalienable rights of Plaintiff and if they knew, they acted willfully, knowingly and/or purposefully, and with deliberate indifference to deprive Plaintiff of his constitutionally protected rights of equal protection of the laws. Due to the nature of Defendants' conduct, Plaintiff is entitled to recover damages against the individual Defendants.

## COUNT 3 – DEFENDANTS DEPRIVED PLAINTIFF OF DUE PROCESS OF LAW

Plaintiff incorporates the previous argument and following paragraphs by reference herein.

"*due process is not synonymous with judicial process*:" *National Auto Corp. v.Barfod*, <u>289 Pa. 307</u>, 311; *Reetz v. Michigan*, <u>188 U.S. 505</u>, 508.

"*The essential elements of due process of law are notice, and an opportunity to be heard and to defend in an orderly proceeding... by due process of law was meant 'a law which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial*.' Somewhat similar is the statement that it is a rule as old as the law that *no one shall be personally bound until he has had his day in court, by which is meant, until he has been duly cited to appear, and has been afforded an opportunity to be heard. Judgment without such citation and opportunity wants all the attributes of a judicial determination; it is judicial usurpation and oppression and can never be upheld where justice is fairly administered*." *Fiehe v. R.E. Householder Co.*, 125 So. 2, 7 (Fla. 1929).

*Due process is defined as an orderly proceeding wherein a person is served with notice, actual or constructive, and has an opportunity to be heard and to enforce and protect his rights* before a court having power to hear and determine the case. *Kazubowski v. Kazubowski*, 45 Ill.2d 405, 259, N.E.2d 282, 290. (*Seno v. Francke*, <u>20 Ill. 2d 70</u>, 74; *Orton Crane & Shovel Co. v. Federal Reserve Bank of Chicago*, <u>409 Ill. 285</u>, 289.)

"*Due process of law implies and comprehends the administration of laws equally applicable to all under established rules which do not violate fundamental principles of private rights*, and in a competent tribunal possessing jurisdiction of the cause and proceeding upon notice. It is founded upon the basic

*principle that **every man shall have his day in court, and the benefit of the general law which proceeds only upon notice and which hears and considers before judgment is rendered and which renders judgment only after trial.** This provision of our organic law guarantees that everyone shall have his life, liberty, property and immunities protected by the general rules characteristic of, basic to and existing in our society under our system of jurisprudence. It contemplates an orderly proceeding adapted to the nature of the case and as to which **any person to be affected shall have notice, an opportunity to be heard, and a chance to protect and enforce his rights** before a tribunal with power to hear and rule his cause..." State v. Green, 232 S.W.2d 897, 903 (Mo. 1950).*

**"It means that no person shall be deprived of life, liberty, property, or of any right granted him by statute, unless the matter involved shall first have been adjudicated against him upon trial conducted according to established rules regulating judicial proceedings. It forbids condemnation without a hearing."** (Emphasis supplied.)

*An Act of the legislature is not necessarily the "law of the land." A State cannot make anything "due process of law" which, by its own legislation, it declares to be such. An Act of the legislature, which transfers the property of one man to another without his consent, is not a constitutional exercise of legislative power, because, if effectual, it operates to deprive a man of his enjoyment without "due process of law." Burdick v. People, 36 N.E. 948, 949, 149 Ill. 600 (1894). (Davidson v. New Orleans, supra, Taylor v. Porter, 4 Hill, 140 ; Rohn v. Harris, 130 Ill. 525; Ervine's Appeal, 16 Penn. St. 256; Hoke v. Henderson, 4 Dev. 1.)*

**"Due process of law does not mean merely according to the will of the Legislature, or the will of some judicial or quasi-judicial body upon whom it may confer authority. It means according to the law of the land, including the Constitution with its guaranties and the legislative enactments and rules duly made by its authority, so far as they are consistent with constitutional limitations."** *Ekern v. McGovern, 154 Wis. 157, 142 N.W. 595, 620 (1913), cases cited.*

*Thus, involved is the principle of due process of law, the constitutional provision with reference to which **was designed to exclude oppression** and **arbitrary power from every branch of the government**, and, with **respect to judicial proceedings**, contemplates a course of proceedings according to rules and principles which have been **established in our system of jurisprudence for the conduct and enforcement of private rights**. Thus, as pointed out in Dupuy v. Tedora, 204 La. 560, 15 So.2d 886, 890 (1943),*

*"It is manifest it was not left to the legislative power to exact any process which might be devised. **The [due process] article is a restraint on the legislative as well as on the executive and judicial powers of government**, and cannot be so construed as to leave congress free to make any process 'due process of law,' by its mere will." Murray's Lessee v. Hoboken Imp. Co., 18 How. (59 U.S.) 272, 276 (1855); French v. Barber Asphalt, 181 U.S. 324, 330 (1900).*

**"[T]he provision [due process clause] is designed to exclude oppression and arbitrary power from every branch of government."** *Dupuy v. Tedora, 15 So.2d 886, 890, 204 La. 560 (1943).*

*"'The law of the land,' as used in the constitution, has long had an interpretation, which is well understood and practically adhered to. It does not mean an Act of the Legislature; if such was the true interpretation, this branch of the government could at any time take away life, liberty, property and privilege, without a trial by jury... it may be received as a self-evident proposition, universally understood and acknowledged, throughout this country, that **no person can be taken, or imprisoned, or disseized of his freehold, or liberties, or estate, or exiled, or condemned, or deprived of life, liberty or property, unless ' by the law of the land or the judgment of his peers.' The words by the law of the land**, as used in Magna Carta in reference to this subject, are understood to **mean due process of law**; that is, by indictment, or presentment of good and lawful men." Judge Story, in 3 Com. on Constitution, § 1783, says, "**the clause, by law of the land, in effect affirms the right of trial according to the process and proceedings of the common law**." Dartmouth College v. Woodward, 4 Wheat. 518" Saco v. Wentworth, 37 Maine 165, 171 (1852).*

*"The Legislative has no right to absolute, arbitrary power over the lives and fortunes of the people; nor can mortals assume a prerogative not only too high for men, but for angels, and therefore reserved for the exercise of the Deity only…"**The Legislative cannot justly assume to itself a power to rule by extempore arbitrary decrees; but it is bound to see that justice is dispensed, and that the rights of the subjects be decided by promulgated, standing, and known laws, and authorized independent judges"** " Samuel Adams, The Rights of the Colonists (1772).*

Plaintiff was not given an opportunity to present his case nor adduce evidence to establish the rights which he asserted in writing at the Justice Court level, and upon seeking redress at the County Court level, was arrested. The following are actions which the Defendants engaged in which deprived Plaintiff of Due Process of Law.

1. Plaintiff was not given the opportunity to exercise the right of controverting, by proof, every material fact which bears on the question of his right before the Court. Thus, h was deprived of Due Process of Law.
2. The Defendants interfered with Plaintiff's right to due process of law when Plaintiff was denied the opportunity to challenge the Court's jurisdiction over Plaintiff's private person.
3. The Defendants interfered with Plaintiff's right to due process of the laws when the Defendants issued a warrant for Plaintiff's arrest, without giving opportunity to appear before the court, which subsequently led to his arrest and effectively denying Plaintiff of his constitutionally protected right of due process of law.
4. Defendants denied Plaintiff due process of law by refusing Plaintiff the opportunity to be heard, to challenge Court's jurisdiction to bind Plaintiff, and denying Plaintiff of his constitutionally protected right to assert his private right.
5. Defendants' conduct under color of law, either in their individual acts or contribution to the abusive environment, caused Plaintiff to be denied due process of law.
6. The Defendants ignored procedural and substantive requirements in an unlawful de facto campaign which denied Plaintiff due process of law.
7. Defendants' actions intentionally and willfully deprived Plaintiff of due process of law and without recourse for the arbitrary conduct of Defendants.
8. Defendants' actions proximately caused damages to Plaintiff as previously alleged.
9. As government agents Defendants should have known their duties were to protect the constitutionally protected unalienable rights of Plaintiff and if they knew, they acted willfully, knowingly and/or purposefully, and with deliberate indifference to deprive Plaintiff of his constitutionally protected rights of due process of law. Due to the nature of Defendants' conduct, Plaintiff is entitled to recover damages against the individual Defendants.

## COUNT 4 – DEFENDANTS FAILED TO SECURE PLAINTIFF'S RIGHT OF DUE PROCESS OF LAW

Plaintiff incorporates the previous argument and following paragraphs by reference herein.

The offices of public officials are held in Trust:

> *As expressed otherwise, the powers delegated to a public officer are held in trust for the people and are to be exercised in behalf of the government or of **all citizens (public and private) who may need the intervention of the officer**." 63C* **Am.Jur.2d, Public Officers and Employees, §247. Emphasis added.**

The offices of public officials were created by way of the Declaration of Independence, and as trustees they are fiduciaries to the people, the beneficiary of the Trust.

> *"It has been said that the fiduciary responsibilities of a public officer cannot be less than those of a private individual." Ibib*
> *"A public official is a* fiduciary *toward the public, including, in the case of a judge, the litigants who appear before him (**public and private**), McNally v. U.S., 483 U.S. 350, 371-372 (1987), Quoting U.S. v Holzer, 816 F.2d. 304, 307:"* **Emphasis added**

As *fiduciaries,* Defendants failed to give Plaintiff the opportunity to assert his rights and to adduce evidence to establish the rights which he asserted in writing at the Justice Court level, and upon seeking redress at the County

Court level, was arrested. The following are actions which the Defendants engaged in which they failed to secure Plaintiff's right to Due Process of Law.

1. Plaintiff was not given the opportunity to exercise the right of controverting, by proof, every material fact which bears on the question of right before the Court.
2. The Defendants failed to secure Plaintiff's right to due process of law when Plaintiff was denied the opportunity to be heard and to challenge the Court's jurisdiction to bind duties upon the Plaintiff's private person.
3. The Defendants failed to secure Plaintiff's right to due process of the laws when the Defendants issued a warrant for Plaintiff's arrest, without giving opportunity to appear before the court, which subsequently led to his arrest and effectively denying Plaintiff of his constitutionally protected right of due process of law.
4. Defendants failed to secure Plaintiff's right to due process of law by refusing Plaintiff the opportunity to challenge Court's jurisdiction over Plaintiff and denying Plaintiff of his constitutionally protected right to present his case.
5. Defendants' conduct under color of law, whether in their individual acts or contributing to this abusive environment, caused Defendants to fail to secure Plaintiff's rights and denied Plaintiff of due process of law.
6. The Defendants ignored procedural and substantive requirements in an unlawful de facto campaign which failed to Plaintiff due process of law.
7. Defendants' actions intentionally and willfully failed to secure Plaintiff's right of due process of law and without recourse for the arbitrary conduct of Defendants.
8. Defendants' negligent actions proximately caused damages to Plaintiff as previously alleged.
9. As government agents Defendants should have known their duties were to protect the constitutionally protected unalienable rights of Plaintiff and if they knew, they acted willfully, knowingly and/or purposefully, and with deliberate indifference to deprive Plaintiff of his constitutionally protected rights of due process of law. Due to the nature of Defendants' conduct, Plaintiff is entitled to recover damages against the individual Defendants

## COUNT 5 – DEFENDANT FAILED TO SECURE THE PERSONAL LIBERTY OF PLAINTIFF

Plaintiff incorporates the previous argument and following paragraphs by reference herein.

The Preamble of the Constitution of the United States, pronounces:

> *"We the People of the United States, in Order to form a more perfect Union, establish Justice, insure domestic Tranquility, provide for the common defence, promote the general Welfare, and __secure the Blessings of Liberty to ourselves and our Posterity__, do ordain and establish this Constitution for the United States of America... to secure these (inalienable) rights, Governments are instituted among Men, deriving their just powers from the consent of the governed"* **The unanimous Declaration of the thirteen united States of America**

The Defendants' authority to adjudicate comes from those who consent to be governed by the government which empowered them. Plaintiff functioning in his natural capacity, *in propria persona,* cannot and has not consented to be governed by any government that governs contrary to the natural laws of His Heavenly Father. He has only consented to be governed by his Creator through the ecclesiastical doctrine of THE KINGDOM OF יהוה ON EARTH, which is reflected in the Declaration of Independence, and protected by the constitution. If the Defendants have proof otherwise, Plaintiff demands that it be presented.

> *That the majority shall prevail is a rule posterior to the formation of government, and results from it. It is not a rule binding upon mankind in their natural state. There, every man is independent of all laws, except those prescribed by nature. __He is not bound by any institutions formed by his fellowmen without his consent__.* **Cruden v. Neale (May Term, 1796.)**

> *"__Of course, a party cannot be bound by a contract that he has not made or authorized__, and the principle is well settled that the liability of __a surety is not to be extended, without his consent, beyond the precise terms of his contract.__* **Alexander v. Bosworth Civ. No. 1307, 1915; Pierce v. Whitney, 63 Cal. 543**.

The personal liberty of practicing religion in the manner one chooses as long as they do not infringe upon another's right is to be secured, as is the right to challenge a Court, the right to a trial, the right to be heard, and the right to due process of law are secured under personal liberty.

*The word "liberty" contained in that amendment embraces not only **the right of a person to be free from physical restraint, but the right to be free in the enjoyment of all his faculties as well**. Allgeyer v. Louisiana, 165 U. S. 578, 165 U. S. 589. **Grosjean v. American Press Co., Inc., 297 U.S. 233,** 244 (1936)*

Plaintiff owes no duty to the state as long as he does not trespass upon its rights, which he has not due to his religious practices and conscience which prohibits him from accepting any entitlements, privileges, or benefits from the state. Plaintiff has also not consented to participate in any of the state's licensing privileges.

*"The individual may stand upon his constitutional rights as a citizen. He is entitled to carry on his private business in his own way. **He owes no such duty to the State, since he receives nothing therefrom beyond the protection of his life and property. His rights are such as existed by the law of the land long antecedent to the organization of the State, and can only be taken from him by due process of law**, and in accordance with the **Constitution**. Among his rights are a refusal to incriminate himself and the **immunity of himself and his property from arrest or seizure except under a warrant of the law. He owes nothing to the public so long as he does not trespass upon their rights**." Hale v. Henkel, 201 U.S. 43, 74-75 (1905).*

The following are actions which the Defendants engaged in failed to secure the personal liberty of plaintiff:

Acting as agents of the state of Texas, Defendants denied Plaintiff of right to challenge the court, right to be heard, right of locomotion, and refused Plaintiff due process of law.

1. Defendants knew, or should have known, that they had no lawful authority to deny Plaintiff of constitutionally protected rights, as Plaintiff was exercising his right to challenge the Court and to be heard.
2. Defendants' actions caused Plaintiff to be unlawfully arrested, and fraudulently pressured into essentially pleading guilty to committing a crime for exercising his personal liberty right of locomotion.
3. Defendants failed to secure the personal liberty of plaintiff as a private person when they unlawfully arrested, and pressured him into essentially pleading guilty to committing a crime for exercising his personal liberty right of locomotion.
4. Defendants' conduct constituted deprivation of Plaintiff's personal liberty rights.
5. As a result of depriving Plaintiff of his personal rights, Defendants failed to protect the Plaintiff's constitutionally protected rights and Plaintiff suffered damages.
6. As government agents Defendants should have known their duties were to protect Plaintiff's constitutionally protected rights and if they knew, they acted willfully, knowingly and/or purposefully, and with deliberate indifference to not secure Plaintiff's constitutionally protected rights. Due to the nature of Defendants' conduct, Plaintiff is entitled to recover damages against the Defendants.

## COUNT 6 – DEPREVATION OF PLAINTIFF'S PERSONAL LIBERTY

Plaintiff incorporates the previous argument and following paragraphs by reference herein. The following are actions of the Defendants which consequently deprived Plaintiff of his personal liberty.

*"We hold these Truths to be self-evident, that all Men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty, and the Pursuit of Happiness—That to secure these Rights, Governments are instituted among Men, deriving their just Powers from the Consent of the Governed"* **The Declaration of Independence.**

30

*"The enumeration in the Constitution of certain rights shall not be construed to deny or disparage others retained by the people."* **Ninth Amendment.**

Defendants' duty is to secure the inalienable rights of the people. Among these rights is the right of personal liberty as long as the people do not infringe on the rights of others. Plaintiff retains all his rights.

Personal Liberty is:

> *The right or power of locomotion; of changing situation, or moving one's person to whatsoever place one's own inclination may direct, <u>without imprisonment or restraint, unless by due course of law</u>. 1 Bl. Comm. 134. Civil Rights Cases, 3 S.Ct. 42, 109 U.S. 3, 27 L.Ed. 835; Pinkerton v. Verberg, 78 Mich. 573, 44 N.W. 579, 7 L.R.A. 507, 18 Am.St.Rep. 473*

1. Acting as agents of the State of Texas, Defendants intentionally caused Plaintiff to be bound, confined, and taken by two Taylor County constables against his will, without probable cause, without authority of law, and without Plaintiff's consent, depriving Plaintiff of liberty - his personal liberty.
2. Defendants knew, or should have known, that they had no lawful authority to order arrest of Plaintiff under Bond Forfeiture, as Plaintiff was exercising his right when he was issued the original complaint.
3. Seeking redress Plaintiff appealed to the County court hoping to make his case that he was not operating a vehicle under the requirements of the Texas Transportation statutory codes, which essentially govern the licensing of commercial activities, not individuals exercising the constitutionally protected common right of locomotion, but was arrested without notice and accuse of missing a hearing under Bond Forfeiture, but was never notified.
4. Defendants' actions caused Plaintiff to be confined unlawfully, depriving Plaintiff of his liberty - his personal liberty.
5. Defendants' conduct constituted deprivation of Plaintiff personal liberty rights.
6. As a result of depriving Plaintiff of his personal liberty, Defendants failed to protect the Plaintiff's inalienable right to personal liberty (to be free from undue government restraints without due process). Plaintiff suffered damages.
7. As government agents Defendants should have known their duties were to protect the constitutionally protected unalienable rights of Plaintiff and if they knew, they acted willfully, knowingly and/or purposefully, and with deliberate indifference to not secure Plaintiff's constitutionally protected rights. Due to the nature of Defendants' conduct, Plaintiff is entitled to recover damages against the Defendants.

## COUNT 7 - DEFENDANTS DEPRIVED PLAINTIFF OF HIS FIRST AMENDMENT RIGHT (RELIGIOUS PRACTICE)

Plaintiff incorporates the previous argument and following paragraphs by reference herein.

The First Amendment guarantees freedoms concerning religious practice and expression. It forbids restriction of an individual's religious practices. Plaintiff's practice and expression of his religion is enmeshed in him following the commands of the Universal Sovereign, as he understands it, as a daily way of life.

In Memorial and Remonstrance Against Religious Assessments, in Selected Writings of James Madison he stated:

> *"in matters of Religion, no man's right is abridged by the institution of Civil Society and that Religion is wholly (100%) exempt from its cognizance." Emphasis added."*

The Supreme Court has found that

> *"Absent proof of insincerity or fraud, a church's decisions " 'on matters purely ecclesiastical, although affecting civil rights, are accepted in litigation before the secular courts as conclusive.' " Id., at 729 (emphasis added); see also Gonzalez v. Roman Catholic Archbishop of Manila, <u>280 U. S. 1</u>, 16 (1929); Our Lady of Guadalupe School v. Morrissey-Berru, 591 U. S. ____ (2020) (slip op., at 26).*

The County Court of Law No. 2 received documentation from the justice Court regarding the religiously motivated reason Plaintiff refused to act in compliance with certain statutory codes of the state which regulated commercial activities. The Defendants did not receive any *proof of insincerity or fraud* from any party and should have *accepted* Plaintiff's religious documents *before the court as conclusive*. However, Defendant disregarded all attempts of Plaintiff to provide proof of his innocence and unamendability to the Court' jurisdiction to bind duties upon him and issued an unlawful warrant for the *exercise of a constitutionally protected Right, depriving Plaintiff of exercising his religion and interfering with matters of conscience.*

> *"The claim and exercise of a constitutional Right cannot be converted into a crime."*
> **Miller vs. U.S.**, 230 F. 486, 489

Therefore, one's religious expression of conscience in service to the Universal Sovereign, which prohibits him from accepting privileges from the Texas Government – cannot be made into a crime since it is secured by the U.S. and Texas Constitutions. See First Amendment to the United States Constitution and the Texas Constitution Article 1.Sec. 6.  Sec. 6-A

> *"There can be no sanction or penalty imposed upon one because of this exercise of constitutional Rights."*
> **Sherar vs. Cullen**, 481 F. 946

> *It is the duty of every man to render to the Creator such homage and such only as he believes to be acceptable to him. **This duty is precedent, both in order of time and in degree of obligation, to the claims of Civil Society**....**We maintain therefore that in matters of Religion, no man's right is abridged by the institution of Civil Society and that Religion is wholly exempt from its cognizance**. Memorial and Remonstrance against Religious Assessments, James Madison, June 20, 1785.*

Plaintiff did not abandon his religious practice nor his constitutionally protected right of locomotion to engage in a driver licensing scheme, which his religion prohibits. Therefore, this is a substantial burden upon Plaintiff's right and the Court had a duty to not substantially burden Plaintiff's free exercise of religion or to interfere in Plaintiff's matters of conscience in regard to his religion. ***Texas Constitution Article 1.Sec. 6.*** As this applies to any ordinance, rule, order, decision, practice, or other exercise of governmental authority, and each law of this state unless the law is expressly made exempt from the application by natural law, and cannot be suspended.

The Defendants' actions consequently deprived plaintiff of his first amendment and constitutionally secured rights.

1. The Defendants deprived the Plaintiff of inalienable, Texas, and U.S. constitutionally protected right to freely exercise religion and to not be interfered with in matters of conscience as Defendants' actions led to Plaintiff arrest under an illegally served warrant.
2. The Defendants also deprived the Plaintiff of said rights when they failed to protect the Plaintiff's inalienable, Texas, and U.S. constitutionally protected right to freely exercise religion and to not be interfered with in matters of conscience.
3. The Court received multiple documents, which presented Plaintiff's religious status and rights. Yet Plaintiff was deprived of the right to exercise his sincere religious practices according to matters of his conscience.
4. As government agents Defendants should have known their duties were to protect the constitutionally protected unalienable rights of Plaintiff (*Declaration of Independence*) and if they knew, they acted willfully, knowingly and/or purposefully, and with deliberate indifference to not secure Plaintiff's constitutionally protected rights. Due to the nature of Defendants' conduct, Plaintiff is entitled to recover damages against the Defendants.

**COUNT 8 – DEFENDANTS DEPRIVED PLAINTIFF OF HIS FIRST AMENDMENT RIGHT**
**(RELIGIOUS EXPRESSION)**

The Defendants' actions consequently deprived plaintiff of his first amendment right to express his religion according to the dictates of his conscience.

Plaintiff incorporates the previous argument and following paragraphs by reference herein.

The First Amendment guarantees freedoms concerning religious practice and expression. It forbids restriction of an individual's religious practices. Plaintiff's practice and expression of his religion is enmeshed in him following the commands of the Universal Sovereign, as he understands it, as a daily way of life.

> *"In short, __it is the greatest absurdity to suppose it in the power of one, or any number of men, at the entering into society, to renounce their essential natural rights, or the means of preserving those rights; when the grand end of civil government, from the very nature of its institution, is for the support, protection, and defence of those very rights__; the principal of which, as is before observed, are Life, Liberty, and Property. __If men, through fear, fraud, or mistake, should in terms renounce or give up any essential natural right, the eternal law of reason and the grand end of society would absolutely vacate such renunciation. The right to freedom being the gift of God Almighty__, it is not in the power of man to alienate this gift and voluntarily become a slave. __Samuel Adams, The Rights of the Colonists__, The Report of the Committee of Correspondence to the Boston Town Meeting, Nov. 20, 1772*

> *"__We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness.- -That to secure these rights, Governments are instituted among Men, deriving their just powers from the consent of the governed…__" The unanimous Declaration of the thirteen united States of America In Congress, July 4, 1776*

It is plain to see that Defendants' only reason for existing is to secure and protect Plaintiff's natural rights which cannot be taken from him without consent and due process of law.

The Defendants' actions consequently deprived plaintiff of his first amendment of worshipping his Heavenly Father according to the dictates of his conscience.

1. The Defendants deprived Plaintiff of worshipping his Heavenly Father according to the dictates of his conscience when he was falsely imprisoned and compelled to sign documents against his conscience and will.
2. Plaintiff is at liberty to maintain his personal and natural right of worship and be unrestrained by secular authorities except under due process of law.
3. Defendants had evidence of Plaintiff religious status but denied him the opportunity to prove his innocence according to his faith, as an unlawful warrant was issued for his arrest, before he got the chance assert his rights to Defendants.
4. Defendants actions deprived Plaintiff of his freedom of religious practice right in matters of conscience.
5. Defendants had the opportunity to hear Plaintiff's testimony and dismiss the cause for conscience reasons instead defendant chose to issue an illegal warrant and had Plaintiff arrested.
6. As government agents Defendants should have known their duties were to protect the constitutionally protected unalienable rights of the Plaintiff and if they knew, they acted willfully, knowingly and/or purposefully, and with deliberate indifference to not secure Plaintiff's constitutionally protected rights. Due to the nature of Defendants' conduct, Plaintiff is entitled to recover damages against the Defendants.

## COUNT 9 – DEFENDANTS DEPRIVED PLAINTIFF OF HIS FIRST AMENDMENT RIGHT (INTERFERING IN MATTERS OF CONSCIENCE)

The Defendants' actions consequently deprived plaintiff of his first amendment right to express his religion according to the dictates of his conscience.

33

Plaintiff incorporates the previous argument and following paragraphs by reference herein.

The First Amendment guarantees freedoms concerning religious practice and expression. It forbids restriction of an individual's religious practices. Plaintiff's practice and expression of his religion is enmeshed in him following the commands of the Universal Sovereign, as he understands it, as a daily way of life.

> *"In short, **it is the greatest absurdity to suppose it in the power of one, or any number of men, at the entering into society, to renounce their essential natural rights, or the means of preserving those rights; when the grand end of civil government, from the very nature of its institution, is for the support, protection, and defence of those very rights**; the principal of which, as is before observed, are Life, Liberty, and Property. **If men, through fear, fraud, or mistake, should in terms renounce or give up any essential natural right, the eternal law of reason and the grand end of society would absolutely vacate such renunciation. The right to freedom being the gift of God Almighty**, it is not in the power of man to alienate this gift and voluntarily become a slave. **Samuel Adams, The Rights of the Colonists,** The Report of the Committee of Correspondence to the Boston Town Meeting, Nov. 20, 1772*
>
> *"**We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness.- -That to secure these rights, Governments are instituted among Men, deriving their just powers from the consent of the governed…**" The unanimous Declaration of the thirteen united States of America In Congress, July 4, 1776*

It is plain to see that Defendants' only reason for existing is to secure and protect Plaintiff's natural rights which cannot be taken from him without consent and due process of law.

The Defendants' actions consequently deprived plaintiff of his first amendment of worshipping his Heavenly Father according to the dictates of his conscience.

1. The Defendants deprived Plaintiff of worshipping his Heavenly Father according to the dictates of his conscience when he was falsely imprisoned and compelled to sign documents against his conscience and will.
2. Plaintiff is at liberty to maintain his personal and natural right of worship and be unrestrained by secular authorities except under due process of law.
3. Defendants had evidence of Plaintiff religious status but denied him the opportunity to prove his innocence according to his faith, as an unlawful warrant was issued for his arrest, before he got the chance assert his rights to Defendants.
4. Defendants actions deprived Plaintiff of his freedom of religious practice right in matters of conscience.
5. Defendants had the opportunity to hear Plaintiff's testimony and dismiss the cause for conscience reasons instead defendant chose to issue an illegal warrant and had Plaintiff arrested.
6. As government agents Defendants should have known their duties were to protect the constitutionally protected unalienable rights of the Plaintiff and if they knew, they acted willfully, knowingly and/or purposefully, and with deliberate indifference to not secure Plaintiff's constitutionally protected rights. Due to the nature of Defendants' conduct, Plaintiff is entitled to recover damages against the Defendants.

## COUNT 10 – DEFENDANTS FAILED TO SECURE PLAINTIFF'S FIRST AMENDMENT CONSTITUTIONALLY PROTECTED RIGHT OF RELIGIOUS PRACTICE

Plaintiff incorporates the previous argument and following paragraphs by reference herein.
1. The Defendants failed to secure Plaintiff's inalienable, Texas, and U.S. constitutionally protected right to freely practice and exercise religion and to not be interfere with in matters of conscience.
2. The Defendants also failed to protect the Plaintiff's inalienable, Texas, and U.S. constitutionally protected right to freely exercise religion and to not be interfered with in matters of conscience.

3. The Court received multiple documents, which presented Plaintiff's religious status and rights to function separately from secularism. Yet Defendants denied Plaintiff the right to defend himself and his right to express his sincere religious practices as a matter of his conscience, by falsely arresting him and compelling him to plead no contest.

4. As government agents Defendants should have known their duties were to protect the constitutionally protected unalienable rights of Plaintiff (*Declaration of Independence*) and if they knew, they acted willfully, knowingly and/or purposefully, and with deliberate indifference to not secure Plaintiff's constitutionally protected rights. Due to the nature of Defendants' conduct, Plaintiff is entitled to recover damages against the Defendants.

## COUNT 11 – DEFENDANTS FAILED TO SECURE PLAINTIFF'S FIRST AMENDMENT CONSTITUTIONALLY PROTECTED RIGHT IN RELIGIOUS EXPRESSION

Plaintiff incorporates the previous argument and following paragraphs by reference herein.

1. The Defendants failed to secure Plaintiff's inalienable, Texas, and U.S. constitutionally protected right to freely practice and exercise religion and to not be interfere with in matters of conscience

2. The Court received multiple documents, which presented Plaintiff's religious status and rights to function separately from secularism. Yet Defendants denied Plaintiff the right to defend himself and his right to express his sincere religious practices as a matter of his conscience, by falsely arresting him and compelling him to plead no contest.

3. As government agents Defendants should have known their duties were to protect the constitutionally protected unalienable rights of Plaintiff (*Declaration of Independence*) and if they knew, they acted willfully, knowingly and/or purposefully, and with deliberate indifference to not secure Plaintiff's constitutionally protected rights. Due to the nature of Defendants' conduct, Plaintiff is entitled to recover damages against the Defendants.

## COUNT 12 – DEFENDANTS FAILED TO SECURE PLAINTIFF'S FIRST AMENDMENT RIGHT (INTERFERING IN MATTERS OF CONSCIENCE)

Plaintiff incorporates the previous argument and following paragraphs by reference herein.

*We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness.--That to secure these rights, Governments are instituted among Men, deriving their just powers from the consent of the governed. Declaration of Independence.*

The duty of government is clearly to secure the *unalienable Rights endowed to the people by their Creator.* The Supreme Court of US has found that *"the basic purpose of the First Amendment provisions ... is to insure that no religion be inhibited and religious exercise to exist ... without interference."*
**Walz v. Tax Comm'n of the City of New York, 397 U.S. at 669**

*"in the forum of conscience, duty to a moral power higher than the state has always been maintained."* **United States v. Seeger, 380 U.S. 163, 171 (1965)**

*"both morals and sound policy require that the state should not violate the conscience of the individual. All our history gives confirmation to the view that liberty of conscience has a moral and social value which makes it worthy of preservation at the hands of the state. Ibib.*

*"religious training and belief," which Congress has defined as "belief in a relation to a Supreme Being involving duties superior to those arising from any human relation." Ibib.*

35

1. The Defendants failed to protect the Plaintiff's unalienable and constitutionally protected right to not interfere in matters of conscience in his free exercise of religion when Defendants had Plaintiff illegally imprisoned.

4. Plaintiff expressed to the Court through multiple documents, his religious status and rights. Yet Plaintiff was denied the right to exercise his right to express his sincere religious practices as a matter of his conscience.

5. As government agents Defendants should have known their duties were to protect the constitutionally protected unalienable rights of Plaintiff and if they knew, they acted willfully, knowingly and/or purposefully, and with deliberate indifference to not secure Plaintiff's constitutionally protected rights. Due to the nature of Defendants' conduct, Plaintiff is entitled to recover damages against the Defendants.

## COUNT 13 – DEFENDANTS FAILED TO SECURE PLAINTIFF'S FOURTH AMENDMENT RIGHT (UNLAWFUL SEARCH)

Plaintiff incorporates the previous argument and following paragraphs by reference herein.

> "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Defendants unlawfully issued warrant for Plaintiff's arrest without probable cause, nor supported by Oath or affirmation, which subsequently led to Plaintiff being unreasonable seized in his person and searched. Plaintiff had every expectation of privacy and his expectation is one that all Constitutions recognize as reasonable.

1. The Defendants failed to secure the Plaintiff's inalienable and U.S. constitutionally protected right of privacy, against unreasonable searches and seizures with an unlawful warrant without probable cause.

2. Defendants lacked probable cause to detain Plaintiff on January 05, 2022, but, Defendants detained Plaintiff for an unreasonable amount of time, for committing of no crime.

3. The Defendants failed to protect the Plaintiff's inalienable and U.S. constitutionally protected right of privacy, against unreasonable searches and seizures with an unlawful warrant without probable cause.

4. The Defendants received multiple documents, which disclosed Plaintiff's religious status, beliefs and rights of conscience. Yet Plaintiff was denied his right of privacy, against unreasonable searches and seizures with an unlawful warrant without probable cause.

5. Defendants lacked probable cause to issue warrant to search and seize Plaintiff's person.

6. Defendants' actions violated Plaintiff's Fourth Amendment rights to be secure in his person from unreasonable search and seizures, unlawful warrant, without probable cause, and his right to privacy.

7. Defendants failed to secure plaintiff's Fourth Amendment right from unreasonable search and seizures, unlawful warrant, without probable cause, and his right to privacy.

8. The Defendants' deprivation of Plaintiff's constitutionally protected rights caused Plaintiff damages

9. Defendants' actions were objectively unreasonable.

10. As government agents Defendants should have known their duties were to protect the constitutionally protected unalienable rights of Plaintiff (*Declaration of Independence*) and if they knew, they acted willfully, knowingly and/or purposefully, and with deliberate indifference to not secure Plaintiff's constitutionally protected rights. Due to the nature of Defendants' conduct, Plaintiff is entitled to recover damages against the Defendants.

The expectation of privacy is a legal test, originated from *Katz v. United States* and is a key component of Fourth Amendment analysis. In *Katz*, Justice Harlan created the Reasonable Expectation of Privacy two-part Test in his concurring opinion:

1. The individual has exhibited an actual (subjective) expectation of privacy.

2. The expectation is one that society is prepared to recognize as reasonable.

36

If both requirements have been met, and the government has taken an action which violates this "expectation," then the government's action has violated the individual's Fourth Amendment rights.

## COUNT 14 - DEFENDANTS FAILED TO SECURE PLAINTIFF'S FOURTH AMENDMENT RIGHT (UNLAWFUL SEIZURE OF PERSON)

Plaintiff incorporates the previous argument and following paragraphs by reference herein.

> "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Defendants unlawfully and illegally issued warrant for Plaintiff's arrest without probable cause, nor supported by Oath or affirmation, which subsequently led to Plaintiff being unreasonable seized in his person and searched. Plaintiff had every expectation of privacy and his expectation is one that all Constitutions recognize as reasonable.

1. The Defendants failed to secure the Plaintiff's inalienable and U.S. constitutionally protected right of privacy, against unreasonable searches and seizures with an unlawful warrant without probable cause.
2. Defendants lacked probable cause to detain Plaintiff on January 05, 2022, but, Defendants detained Plaintiff for an unreasonable amount of time, for committing of no crime.
3. The Defendants failed to protect the Plaintiff's inalienable and U.S. constitutionally protected right of privacy, against unreasonable searches and seizures with an unlawful warrant without probable cause.
4. The Defendants received multiple documents, which disclosed Plaintiff's religious status, beliefs and rights of conscience. Yet Plaintiff was denied his right of privacy, against unreasonable searches and seizures with an unlawful warrant without probable cause.
5. Defendants lacked probable cause to issue warrant to search and seize Plaintiff's person.
6. Defendants' actions violated Plaintiff's Fourth Amendment rights to be secure in his person from unreasonable search and seizures, unlawful warrant, without probable cause, and his right to privacy.
7. Defendants failed to secure Plaintiff's Fourth Amendment right from unreasonable search and seizures, unlawful warrant, without probable cause, and his right to privacy.
8. The Defendants' deprivation of Plaintiff's constitutionally protected rights caused Plaintiff damages.
9. Defendants' actions were objectively unreasonable.
10. As government agents Defendants should have known their duties were to protect the constitutionally protected unalienable rights of Plaintiff (*Declaration of Independence*) and if they knew, they acted willfully, knowingly and/or purposefully, and with deliberate indifference to not secure Plaintiff's constitutionally protected rights. Due to the nature of Defendants' conduct, Plaintiff is entitled to recover damages against the Defendants.

The expectation of privacy is a legal test, originated from *Katz v. United States* and is a key component of Fourth Amendment analysis. In *Katz*, Justice Harlan created the Reasonable Expectation of Privacy two-part Test in his concurring opinion:

1. The individual has exhibited an actual (subjective) expectation of privacy.
2. The expectation is one that society is prepared to recognize as reasonable.

If both requirements have been met, and the government has taken an action which violates this "expectation," then the government's action has violated the individual's Fourth Amendment rights.

## COUNT 15 - DEFENDANTS FAILED TO SECURE PLAINTIFF'S FOURTH AMENDMENT RIGHT (UNLAWFUL WARRANT)

Plaintiff incorporates the previous argument and following paragraphs by reference herein.

> *"[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."*

Defendants unlawfully issued warrant for Plaintiff's arrest without probable cause, nor supported by Oath or affirmation, which subsequently led to Plaintiff being unreasonable seized in his person and searched. Plaintiff had every expectation of privacy and his expectation is one that all Constitutions recognize as reasonable.

1. The Defendants failed to secure the Plaintiff's inalienable and U.S. constitutionally protected right of privacy, against unreasonable searches and seizures with an unlawful warrant without probable cause.
2. Defendants lacked probable cause to detain Plaintiff on January 05, 2022, but, Defendants detained Plaintiff for an unreasonable amount of time, for committing of no crime.
3. The Defendants failed to protect the Plaintiff's inalienable and U.S. constitutionally protected right of privacy, against unreasonable searches and seizures with an unlawful warrant without probable cause.
4. The Defendants received multiple documents, which disclosed Plaintiff's religious status, beliefs and rights of conscience. Yet Plaintiff was denied his right of privacy, against unreasonable searches and seizures with an unlawful warrant without probable cause.
5. Defendants lacked probable cause to issue warrant to search and seize Plaintiff's person.
6. Defendants' actions violated Plaintiff's Fourth Amendment rights to be secure in his person from unreasonable search and seizures, unlawful warrant, without probable cause, and his right to privacy.
7. Defendants failed to secure plaintiff's Fourth Amendment right from unreasonable search and seizures, unlawful warrant, without probable cause, and his right to privacy.
8. The Defendants' deprivation of Plaintiff's constitutionally protected rights caused Plaintiff damages.
9. Defendants' actions were objectively unreasonable.
10. As government agents Defendants should have known their duties were to protect the constitutionally protected unalienable rights of Plaintiff (*Declaration of Independence*) and if they knew, they acted willfully, knowingly and/or purposefully, and with deliberate indifference to not secure Plaintiff's constitutionally protected rights. Due to the nature of Defendants' conduct, Plaintiff is entitled to recover damages against the Defendants.

The expectation of privacy is a legal test, originated from *Katz v. United States* and is a key component of Fourth Amendment analysis. In *Katz*, Justice Harlan created the Reasonable Expectation of Privacy two-part Test in his concurring opinion:

1. The individual has exhibited an actual (subjective) expectation of privacy.
2. The expectation is one that society is prepared to recognize as reasonable.

If both requirements have been met, and the government has taken an action which violates this "expectation," then the government's action has violated the individual's Fourth Amendment rights.

## COUNT 16 - DEFENDANTS FAILED TO SECURE PLAINTIFF'S FOURTH AMENDMENT RIGHT (NO PROBABLE CAUSE)

Plaintiff incorporates the previous argument and following paragraphs by reference herein.

> *"[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."*

Defendants unlawfully issued warrant for Plaintiff's arrest without probable cause, nor supported by Oath or affirmation, which subsequently led to Plaintiff being unreasonable seized in his person and searched. Plaintiff had every expectation of privacy and his expectation is one that all Constitutions recognize as reasonable.

1. The Defendants failed to secure the Plaintiff's inalienable and U.S. constitutionally protected right of privacy, against unreasonable searches and seizures with an unlawful warrant without probable cause.
2. Defendants lacked probable cause to detain Plaintiff on January 05, 2022 but, Defendants detained Plaintiff for an unreasonable amount of time, for committing of no crime.
3. The Defendants failed to protect the Plaintiff's inalienable and U.S. constitutionally protected right of privacy, against unreasonable searches and seizures with an unlawful warrant without probable cause.
4. The Defendants received multiple documents, which disclosed Plaintiff's religious status, beliefs and rights of conscience. Yet Plaintiff was denied his right of privacy, against unreasonable searches and seizures with an unlawful warrant without probable cause.
5. Defendants lacked probable cause to issue warrant to search and seize Plaintiff's person.
6. Defendants' actions violated Plaintiff's Fourth Amendment rights to be secure in his person from unreasonable search and seizures, unlawful warrant, without probable cause, and his right to privacy.
7. Defendants failed to secure plaintiff's Fourth Amendment right from unreasonable search and seizures, unlawful warrant, without probable cause, and his right to privacy.
8. The Defendants' deprivation of Plaintiff's constitutionally protected rights caused Plaintiff damages.
9. Defendants' actions were objectively unreasonable.
10. As government agents Defendants should have known their duties were to protect the constitutionally protected unalienable rights of Plaintiff (*Declaration of Independence*) and if they knew, they acted willfully, knowingly and/or purposefully, and with deliberate indifference to not secure Plaintiff's constitutionally protected rights. Due to the nature of Defendants' conduct, Plaintiff is entitled to recover damages against the Defendants

The expectation of privacy is a legal test, originated from *Katz v. United States* and is a key component of Fourth Amendment analysis. In *Katz*, Justice Harlan created the Reasonable Expectation of Privacy two-part Test in his concurring opinion:

1. The individual has exhibited an actual (subjective) expectation of privacy.
2. The expectation is one that society is prepared to recognize as reasonable.

If both requirements have been met, and the government has taken an action which violates this "expectation," then the government's action has violated the individual's Fourth Amendment rights.

### COUNT 17 - DEFENDANTS FAILED TO SECURE PLAINTIFF'S FOURTH AMENDMENT RIGHT (PRIVACY)

Plaintiff incorporates the previous argument and following paragraphs by reference herein.

*"[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."*

Defendants unlawfully issued warrant for Plaintiff's arrest without probable cause, nor supported by Oath or affirmation, which subsequently led to Plaintiff being unreasonable seized in his person and searched. Plaintiff had every expectation of privacy and his expectation is one that all Constitutions recognize as reasonable.

1. The Defendants failed to secure the Plaintiff's inalienable and U.S. constitutionally protected right of privacy, against unreasonable searches and seizures with an unlawful warrant without probable cause.

2. Defendants lacked probable cause to detain Plaintiff on January 05, 2022, but, Defendants detained Plaintiff for an unreasonable amount of time, for committing of no crime.
3. The Defendants failed to protect the Plaintiff's inalienable and U.S. constitutionally protected right of privacy, against unreasonable searches and seizures with an unlawful warrant without probable cause.
4. The Defendants received multiple documents, which disclosed Plaintiff's religious status, beliefs and rights of conscience. Yet Plaintiff was denied his right of privacy, against unreasonable searches and seizures with an unlawful warrant without probable cause.
5. Defendants lacked probable cause to issue warrant to search and seize Plaintiff's person.
6. Defendants' actions violated Plaintiff's Fourth Amendment rights to be secure in his person from unreasonable search and seizures, unlawful warrant, without probable cause, and his right to privacy.
7. Defendants failed to secure plaintiff's Fourth Amendment right from unreasonable search and seizures, unlawful warrant, without probable cause, and his right to privacy.
8. The Defendants' deprivation of Plaintiff's constitutionally protected rights caused Plaintiff damages.
9. Defendants' actions were objectively unreasonable.
10. As government agents Defendants should have known their duties were to protect the constitutionally protected inalienable rights of Plaintiff (*Declaration of Independence*) and if they knew, they acted willfully, knowingly and/or purposefully, and with deliberate indifference to not secure Plaintiff's constitutionally protected rights. Due to the nature of Defendants' conduct, Plaintiff is entitled to recover damages against the Defendants

The expectation of privacy is a legal test, originated from *Katz v. United States* and is a key component of Fourth Amendment analysis. In *Katz*, Justice Harlan created the Reasonable Expectation of Privacy two-part Test in his concurring opinion:

      1. The individual has exhibited an actual (subjective) expectation of privacy.
      2. The expectation is one that society is prepared to recognize as reasonable.

If both requirements have been met, and the government has taken an action which violates this "expectation," then the government's action has violated the individual's Fourth Amendment rights.

### COUNT 18 – DEFENDANTS DEPRIVED PLAINTIFF OF HIS FOURTH AMENDMENT RIGHT (UNLAWFUL SEARCH)

Plaintiff incorporates the previous argument and following paragraphs by reference herein.

> *"[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."*

Defendants unlawfully issued warrant for Plaintiff's arrest without probable cause, nor supported by Oath or affirmation, which subsequently led to Plaintiff being unreasonable seized in his person and searched. Plaintiff had every expectation of privacy and his expectation is one that all Constitutions recognize as reasonable.

1. The Defendants deprived Plaintiff of his inalienable and U.S. constitutionally protected right of privacy, against unreasonable searches and seizures with an unlawful warrant without probable cause.
2. Defendants lacked probable cause to detain Plaintiff on January 05, 2022, but, Defendants detained Plaintiff for an unreasonable amount of time, for committing of no crime.
3. The Defendants deprived Plaintiff of his inalienable and U.S. constitutionally protected right of privacy, against unreasonable searches and seizures with an unlawful warrant without probable cause.
4. The Defendants received multiple documents, which disclosed Plaintiff's religious status, beliefs and rights of conscience. Yet Plaintiff was denied his right of privacy, against unreasonable searches and seizures with an unlawful warrant without probable cause,

5. Defendants lacked probable cause to issue warrant to search and seize Plaintiff's person.
6. Defendants' actions violated Plaintiff's Fourth Amendment rights to be secure in his person from unreasonable search and seizures, unlawful warrant, without probable cause, and his right to privacy.
7. Defendants deprived Plaintiff of his Fourth Amendment right from unreasonable search and seizures, unlawful warrant, without probable cause, and his right to privacy.
8. The Defendants' deprivation of Plaintiff's constitutionally protected rights caused Plaintiff damages
9. Defendants' actions were objectively unreasonable.
10. As government agents Defendants should have known their duties were to protect the constitutionally protected unalienable rights of Plaintiff (*Declaration of Independence*) and if they knew, they acted willfully, knowingly and/or purposefully, and with deliberate indifference to not secure Plaintiff's constitutionally protected rights. Due to the nature of Defendants' conduct, Plaintiff is entitled to recover damages against the Defendants.

The expectation of privacy is a legal test, originated from *Katz v. United States* and is a key component of Fourth Amendment analysis. In *Katz*, Justice Harlan created the Reasonable Expectation of Privacy two-part Test in his concurring opinion:

       1. The individual has exhibited an actual (subjective) expectation of privacy.
       2. The expectation is one that society is prepared to recognize as reasonable.

If both requirements have been met, and the government has taken an action which violates this "expectation," then the government's action has violated the individual's Fourth Amendment rights.

## COUNT 19 - DEFENDANTS DEPRIVED PLAINTIFF OF HIS FOURTH AMENDMENT RIGHT (UNLAWFUL SEIZURE OF PERSON)

Plaintiff incorporates the previous argument and following paragraphs by reference herein.

> "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Defendants unlawfully issued warrant for Plaintiff's arrest without probable cause, nor supported by Oath or affirmation, which subsequently led to Plaintiff being unreasonable seized in his person and searched. Plaintiff had every expectation of privacy and his expectation is one that all Constitutions recognize as reasonable.

1. The Defendants deprived Plaintiff of his inalienable and U.S. constitutionally protected right of privacy, against unreasonable searches and seizures with an unlawful warrant without probable cause.
2. Defendants lacked probable cause to detain Plaintiff on January 05, 2022, but, Defendants detained Plaintiff for an unreasonable amount of time, for committing of no crime.
3. The Defendants deprived Plaintiff of his inalienable and U.S. constitutionally protected right of privacy, against unreasonable searches and seizures with an unlawful warrant without probable cause.
4. The Defendants received multiple documents, which disclosed Plaintiff's religious status, beliefs and rights of conscience. Yet Plaintiff was denied his right of privacy, against unreasonable searches and seizures with an unlawful warrant without probable cause.
5. Defendants lacked probable cause to issue warrant to search and seize Plaintiff's person.
6. Defendants' actions violated Plaintiff's Fourth Amendment rights to be secure in his person from unreasonable search and seizures, unlawful warrant, without probable cause, and his right to privacy.
7. Defendants deprived Plaintiff of his Fourth Amendment right from unreasonable search and seizures, unlawful warrant, without probable cause, and his right to privacy.
8. The Defendants' deprivation of Plaintiff's constitutionally protected rights caused Plaintiff damages.
9. Defendants' actions were objectively unreasonable.

10.  As government agents Defendants should have known their duties were to protect the constitutionally protected unalienable rights of Plaintiff (*Declaration of Independence*) and if they knew, they acted willfully, knowingly and/or purposefully, and with deliberate indifference to not secure Plaintiff's constitutionally protected rights. Due to the nature of Defendants' conduct, Plaintiff is entitled to recover damages against the Defendants.

The expectation of privacy is a legal test, originated from *Katz v. United States* and is a key component of Fourth Amendment analysis. In *Katz*, Justice Harlan created the Reasonable Expectation of Privacy two-part Test in his concurring opinion:

> 1. The individual has exhibited an actual (subjective) expectation of privacy.
> 2. The expectation is one that society is prepared to recognize as reasonable.

If both requirements have been met, and the government has taken an action which violates this "expectation," then the government's action has violated the individual's Fourth Amendment rights.

### COUNT 20 - DEFENDANTS DEPRIVED PLAINTIFF OF HIS FOURTH AMENDMENT RIGHT (UNLAWFUL WARRANT)

Plaintiff incorporates the previous argument and following paragraphs by reference herein.

> *"[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."*

Defendants unlawfully issued warrant for Plaintiff's arrest without probable cause, nor supported by Oath or affirmation, which subsequently led to Plaintiff being unreasonable seized in his person and searched. Plaintiff had every expectation of privacy and his expectation is one that all Constitutions recognize as reasonable.

1. The Defendants deprived Plaintiff of his inalienable and U.S. constitutionally protected right of privacy, against unreasonable searches and seizures with an unlawful warrant without probable cause.
2. Defendants lacked probable cause to detain Plaintiff on January 05, 2022, but, Defendants detained Plaintiff for an unreasonable amount of time, for committing of no crime.
3. The Defendants deprived Plaintiff of his inalienable and U.S. constitutionally protected right of privacy, against unreasonable searches and seizures with an unlawful warrant without probable cause.
4. The Defendants received multiple documents, which disclosed Plaintiff's religious status, beliefs and rights of conscience. Yet Plaintiff was denied his right of privacy, against unreasonable searches and seizures with an unlawful warrant without probable cause.
5.  Defendants lacked probable cause to issue warrant to search and seize Plaintiff's person.
6. Defendants' actions violated Plaintiff's Fourth Amendment rights to be secure in his person from unreasonable search and seizures, unlawful warrant, without probable cause, and his right to privacy.
7. Defendants deprived Plaintiff of his Fourth Amendment right from unreasonable search and seizures, unlawful warrant, without probable cause, and his right to privacy.
8.  The Defendants' deprivation of Plaintiff's constitutionally protected rights caused Plaintiff damages.
9.  Defendants' actions were objectively unreasonable.
10. As government agents Defendants should have known their duties were to protect the constitutionally protected unalienable rights of Plaintiff (*Declaration of Independence*) and if they knew, they acted willfully, knowingly and/or purposefully, and with deliberate indifference to not secure Plaintiff's constitutionally protected rights. Due to the nature of Defendants' conduct, Plaintiff is entitled to recover damages against the Defendants.

The expectation of privacy is a legal test, originated from *Katz v. United States* and is a key component of Fourth Amendment analysis. In *Katz*, Justice Harlan created the Reasonable Expectation of Privacy two-part Test in his concurring opinion:

1. The individual has exhibited an actual (subjective) expectation of privacy.
2. The expectation is one that society is prepared to recognize as reasonable.

If both requirements have been met, and the government has taken an action which violates this "expectation," then the government's action has violated the individual's Fourth Amendment rights.

## COUNT 21 - DEFENDANTS DEPRIVED PLAINTIFF OF HIS FOURTH AMENDMENT RIGHT (NO PROBABLE CAUSE)

Plaintiff incorporates the previous argument and following paragraphs by reference herein.

> *"[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."*

Defendants unlawfully issued warrant for Plaintiff's arrest without probable cause, nor supported by Oath or affirmation, which subsequently led to Plaintiff being unreasonable seized in his person and searched. Plaintiff had every expectation of privacy and his expectation is one that all Constitutions recognize as reasonable.

1. The Defendants deprived Plaintiff of his inalienable and U.S. constitutionally protected right of privacy, against unreasonable searches and seizures with an unlawful warrant without probable cause.
2. Defendants lacked probable cause to detain Plaintiff on January 05, 2022, but, Defendants detained Plaintiff for an unreasonable amount of time, for committing of no crime.
3. The Defendants deprived Plaintiff of his inalienable and U.S. constitutionally protected right of privacy, against unreasonable searches and seizures with an unlawful warrant without probable cause.
4. The Defendants received multiple documents, which disclosed Plaintiff's religious status, beliefs and rights of conscience. Yet Plaintiff was denied his right of privacy, against unreasonable searches and seizures with an unlawful warrant without probable cause.
5. Defendants lacked probable cause to issue warrant to search and seize Plaintiff's person.
6. Defendants' actions violated Plaintiff's Fourth Amendment rights to be secure in his person from unreasonable search and seizures, unlawful warrant, without probable cause, and his right to privacy.
7. Defendants deprived Plaintiff of his Fourth Amendment right from unreasonable search and seizures, unlawful warrant, without probable cause, and his right to privacy.
8. The Defendants' deprivation of Plaintiff's constitutionally protected rights caused Plaintiff damages.
9. Defendants' actions were objectively unreasonable.
10. As government agents Defendants should have known their duties were to protect the constitutionally protected unalienable rights of Plaintiff (*Declaration of Independence*) and if they knew, they acted willfully, knowingly and/or purposefully, and with deliberate indifference to not secure Plaintiff's constitutionally protected rights. Due to the nature of Defendants' conduct, Plaintiff is entitled to recover damages against the Defendants

The expectation of privacy is a legal test, originated from *Katz v. United States* and is a key component of Fourth Amendment analysis. In *Katz*, Justice Harlan created the Reasonable Expectation of Privacy two-part Test in his concurring opinion:

1. The individual has exhibited an actual (subjective) expectation of privacy.
2. The expectation is one that society is prepared to recognize as reasonable.

43

If both requirements have been met, and the government has taken an action which violates this "expectation," then the government's action has violated the individual's Fourth Amendment rights.

### COUNT 22 - DEFENDANTS DEPRIVED PLAINTIFF OF HIS FOURTH AMENDMENT RIGHT (PRIVACY)

Plaintiff incorporates the previous argument and following paragraphs by reference herein.

Though the United States Constitution does not contain any explicit right to privacy, The Bill of Rights expresses the concerns of James Madison along with other framers of the Constitution for protecting privacy.

*"The enumeration in the Constitution of certain rights shall not be construed to deny or disparage others retained by the people."* **Ninth Amendment.**

*The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.* **Fourth Amendment**

Defendants unlawfully issued warrant for Plaintiff's arrest without probable cause, nor supported by Oath or affirmation, which subsequently led to Plaintiff being unreasonable seized in his person and searched. Plaintiff had every expectation of privacy and his expectation is one that all Constitutions recognize as reasonable.

1. The Defendants deprived Plaintiff of his inalienable and U.S. constitutionally protected right of privacy, against unreasonable searches and seizures with an unlawful warrant without probable cause.
2. Defendants lacked probable cause to detain Plaintiff on January 05, 2022 but, Defendants detained Plaintiff for an unreasonable amount of time, for committing of no crime.
3. The Defendants deprived Plaintiff of his inalienable and U.S. constitutionally protected right of privacy, against unreasonable searches and seizures with an unlawful warrant without probable cause.
4. The Defendants received multiple documents, which disclosed Plaintiff's religious status, beliefs and rights of conscience. Yet Plaintiff was denied his right of privacy, against unreasonable searches and seizures with an unlawful warrant without probable cause.
5. Defendants lacked probable cause to issue warrant to search and seize Plaintiff's person.
6. Defendants' actions violated Plaintiff's Fourth Amendment rights to be secure in his person from unreasonable search and seizures, unlawful warrant, without probable cause, and his right to privacy.
7. Defendants deprived Plaintiff of his Fourth Amendment right from unreasonable search and seizures, unlawful warrant, without probable cause, and his right to privacy.
8. The Defendants' deprivation of Plaintiff's constitutionally protected rights caused Plaintiff damages.
9. Defendants' actions were objectively unreasonable.
10. As government agents Defendants should have known their duties were to protect the constitutionally protected unalienable rights of Plaintiff (*Declaration of Independence*) and if they knew, they acted willfully, knowingly and/or purposefully, and with deliberate indifference to not secure Plaintiff's constitutionally protected rights. Due to the nature of Defendants' conduct, Plaintiff is entitled to recover damages against the Defendants

The expectation of privacy is a legal test, originated from *Katz v. United States* and is a key component of Fourth Amendment analysis. In *Katz*, Justice Harlan created the Reasonable Expectation of Privacy two-part Test in his concurring opinion:

1. The individual has exhibited an actual (subjective) expectation of privacy.
2. The expectation is one that society is prepared to recognize as reasonable.

If both requirements have been met, and the government has taken an action which violates this "expectation," then the government's action has violated the individual's Fourth Amendment rights.

### COUNT 23 – DEFENDANTS' FAILURE TO SECURE PLAINTIFF'S RIGHT TO PRIVACY (CAUSED DEFAMATION)

Plaintiff incorporates the previous argument and following paragraphs by reference herein.

The right to privacy is retained by the people.

1. The Defendants failed to protect the Plaintiff's inalienable and constitutional right to privacy.
2. When Plaintiff was being arrested by two constables, he was searched without his consent.
3. Defendants had no probable cause to arrest, or legal warrant to search Plaintiff's person, whose arrest subsequently led to the taking of Plaintiff's property.
4. Due to the unlawful activity of the Defendants, the defamation of Plaintiff's character took place as Plaintiff was unlawfully convicted for committing a crime, which is now public record.

> *"Defamation is the publication of a statement which tends to lower a person in the estimation of right thinking members of society generally; or which tends to make them shun or avoid that person."*
> **P.H. Winfield, A Textbook of the Law of Tort § 72, at 242 (5th ed. 1950).**

> *"Defamation ... is involved in two related harms, libel and slander. A familiar statement is that libel is written whereas slander is oral. This covers the idea in a general way but tends to mislead because defamation may be published without the use of words and hence be neither written nor oral. Thus libel may be perpetrated by hanging a person in effigy and slander, by sign or gesture."*
> **Rollin M. Perkins & Ronald N. Boyce, Criminal Law 489 (3d ed. 1982).**

5. As government agents Defendants should have known their duties were to protect the constitutionally protected unalienable rights of Plaintiff and if they knew, they acted willfully, knowingly and/or purposefully, and with deliberate indifference to not secure Plaintiff's constitutionally protected rights.
6. Due to the nature of Defendants' conduct, Plaintiff is entitled to recover damages against the Defendants.

### COUNT 24 – DEFENDANTS VIOLATED PLAINTIFF'S FOURTH AMENDMENT RIGHT SEIZURE OF HUMAN BEING - KIDNAPPING

Plaintiff incorporates the previous argument and following paragraphs by reference herein.

According to Black's Law Dictionary 9th. Ed. "kidnap" means:
> *To seize and take away by force or fraud, often with a demand for ransom.*

According to Black's Law Dictionary 9th. Ed. "ransom" means:
> 1. *Money or other consideration demanded or paid for the release of a captured person or property. See KIDNAPPING. 2. The release of a captured person or property in exchange for payment of a demanded price.*

> Ransom, 1. *To obtain the release of (a captive) by paying a demanded price. 2. To release (a captive) upon receiving such a payment. 3. To hold and demand payment for the release of (a captive).*

1. The Defendants participated kidnapping of the Plaintiff *on January 05, 2022,* when Defendants unlawfully imprisoned Plaintiff.
2. The Defendants ordered the before mentioned agents of the Taylor County Constable office to seize Plaintiff's person in an 'act of false arrest' *on January 05, 2022* without due process of the law.
3. The Defendants' order caused Plaintiff to be held for a ransom of $609.00 *on January 05, 2022* (See Exhibit: G).

45

4. As government agents Defendants should have known their duties were to protect the constitutionally protected unalienable rights of Plaintiff and if they knew, they acted willfully, knowingly and/or purposefully, and with deliberate indifference to not secure Plaintiff's constitutionally protected rights. Due to the nature of Defendants' conduct, Plaintiff is entitled to recover damages against the Defendants.

## COUNT 25 – DEFENDANTS FALSELY IMPRISONED PLAINTIFF

Plaintiff incorporates the previous argument and following paragraphs by reference herein.

1. Defendants intentionally ordered the imprisonment of Plaintiff without probable cause, without authority of law, and without Plaintiff's consent.
2. Defendants knew, or should have known, that they had no lawful authority to have Plaintiff arrested under Bond Forfeiture.
3. Defendants' actions caused Plaintiff to be confined unlawfully.
4. Defendants' conduct constituted false imprisonment of Plaintiff.
5. As a result of the false imprisonment, Plaintiff suffered damages.
6. As government agents Defendants should have known their duties were to protect the constitutionally protected unalienable rights of all humans and if they knew, they acted willfully, knowingly and/or purposefully, and with deliberate indifference to deprive Plaintiff of his constitutionally protected rights. Due to the nature of Defendants' conduct, Plaintiff is entitled to recover damages against the Defendants.

## COUNT 26 – FAILURE TO SECURE PLAINTIFF'S RIGHT TO PURSUE HAPPINESS

Plaintiff incorporates the previous argument and following paragraphs by reference herein.

> *"We hold these Truths to be self-evident, that all Men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty, and the Pursuit of Happiness—That to secure these Rights, Governments are instituted among Men, deriving their just Powers from the Consent of the Governed"* **The Declaration of Independence.**

> *"The enumeration in the Constitution of certain rights shall not be construed to deny or disparage others retained by the people."* **Ninth Amendment.**

Defendants' duty is to secure the inalienable rights of the Plaintiff. Among these rights is the right to pursue happiness as long as the Plaintiff does not infringe on the rights of others. Plaintiff retains all his rights.

It makes the Plaintiff happy to strive to live by the every Word of his Heavenly Father (Deuteronomy 8:3 and Matthew 4:4). The Word of Plaintiff's Heavenly Father commands him to be holy and separate from secularism (Leviticus 20:26 and 2 Corinthians 6:16-18). This pursue of happiness is easily seen on the face of the documents forwarded to the county court from the trial justice court.

1. Defendants interfered with Plaintiff's pursue of happiness when Defendants denied Plaintiff of his right to personal liberty of separating himself as holy to his Creator, bound, and forced him to accept a de facto governmental policy which he did not consent to (see *Cruden v. Neale (May Term, 1796.)Alexander v. Bosworth Civ. No. 1307, 1915; Pierce v. Whitney, 63 Cal. 543*).
2. The Defendants failed to protect the Plaintiff's inalienable and constitutionally protected right to pursuit happiness as long as he does not infringe on another rights.
3. As government agents Defendants should have known their duties were to protect the constitutionally protected unalienable rights of all humans and if they knew, they acted willfully, knowingly and/or purposefully, and with

deliberate indifference to not secure Plaintiff's constitutionally protected rights. Due to the nature of Defendants' conduct, Plaintiff is entitled to recover damages against the Defendants.

## COUNT 27 – DEPRIVED PLAINTIFF OF HIS RIGHT TO PURSUE HAPPINESS

Plaintiff incorporates the previous argument and following paragraphs by reference herein.

*"We hold these Truths to be self-evident, that all Men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty, and the Pursuit of Happiness—That to secure these Rights, Governments are instituted among Men, deriving their just Powers from the Consent of the Governed"* **The Declaration of Independence.**

*"The enumeration in the Constitution of certain rights shall not be construed to deny or disparage others retained by the people."* **Ninth Amendment.**

Defendants' duty is to secure the inalienable rights of the people. Among these rights is the right to pursue happiness as long as the people do not infringe on the rights of others. Plaintiff retains all his rights.

It makes the Plaintiff happy to strive to live by the every Word of his Heavenly Father (Deuteronomy 8:3 and Matthew 4:4). The Word of Plaintiff's Heavenly Father commands him to be holy and separate from secularism (Leviticus 20:26 and 2 Corinthians 6:16-18). This pursue of happiness is easily seen on the face of the documents forwarded to the county court from the trial justice court.

1. Defendants interfered with and deprived Plaintiff's pursue of happiness when Defendants denied Plaintiff of his right to personal liberty of separating himself as holy to his Creator, bound, and forced him to accept a de facto governmental policy which he did not consent to (see *Cruden v. Neale (May Term, 1796.)Alexander v. Bosworth Civ. No. 1307, 1915; Pierce v. Whitney, 63 Cal. 543*), and which is against what his Heavenly Father has commanded him to do.
2. The Defendants failed to protect the Plaintiff's inalienable and constitutionally protected right to pursuit happiness as long as he does not infringe on another rights.
3. As government agents Defendants should have known their duties were to protect the constitutionally protected unalienable rights of all humans and if they knew, they acted willfully, knowingly and/or purposefully, and with deliberate indifference to not secure Plaintiff's constitutionally protected rights. Due to the nature of Defendants' conduct, Plaintiff is entitled to recover damages against the Defendants.

## COUNT 28 – DEFENDANTS DEPRIVED PLAINTIFF OF HIS FOURTEENTH AMENDMENT RIGHT (SEIZURE OF PERSONAL PROPERTY – THEFT)

Plaintiff incorporates the previous argument and following paragraphs by reference herein.

*"...nor shall any State deprive any person of life, liberty, or property"* **Fourteenth Amendment Section 1.**

*The right of property is that sole and despotic dominion which one man claims and exercises over the external things of the world, in total exclusion of the right of any other individual in the universe. It consists in the free use, enjoyment, and disposal of all a person's acquisitions, without any control or diminution save only by the laws of the land.* **1 Bl.Comm. 138; 2 Bl.Comm. 2, 15; Great Northern Ry. Co. v. Washington Elec. Co., 197 Wash. 627, 86 P.2d 208, 217.**

*The word [property]is also commonly used to denote everything which is the subject of ownership, corporeal or incorporeal, tangible or intangible, visible or invisible, real or personal; everything that has an exchangeable value or which goes to make up wealth or estate. It extends to every species of valuable right and interest, and includes real and personal property, easements, franchises, and incorporeal hereditaments.* **Samet v. Farmers'**

**& Merchants' Nat. Bank of Baltimore, C.C.A.Md., 247 F. 669, 671; Globe Indemnity Co. v. Bruce, C.C.A. Okl., 81 F.2d 143, 150.**

According to Black's Law Dictionary 9th. Ed. "theft" means: *1.* ***The felonious taking and removing of another's personal property with the intent of depriving the true owner of it****; larceny. 2. Broadly, any act or instance of stealing, including larceny, burglary,* ***embezzlement****, and* ***false pretenses****.*

1. The Defendants ordered the arrest of Plaintiff, which consequently led to the taking of Plaintiff's personal private property in monies and his real human person – body corporate, *on January 05, 2022*.
2. The Defendants deprived Plaintiff of his Fourteenth Amendment right when they ordered Plaintiff's person to be held for a ransom of $609.00.
3. The Defendants failed to secure Plaintiff's Fourteenth Amendment right when they ordered Plaintiff's person to be held for a ransom of $609.00.
4. As government agents Defendants should have known their duties were to protect the constitutionally protected unalienable rights of Plaintiff and if they knew, they acted willfully, knowingly and/or purposefully, and with deliberate indifference to not secure Plaintiff's constitutionally protected rights. Due to the nature of Defendants' conduct, Plaintiff is entitled to recover damages against the Defendants.

**COUNT 29 – DEFENDANTS FAILED TO SECURE PLAINTIFF'S FOURTEENTH AMENDMENT RIGHT (SEIZURE OF PERSONAL PROPERTY – THEFT)**

Plaintiff incorporates the previous argument and following paragraphs by reference herein.

*"...nor shall any State deprive any person of life, liberty, or property"* **Fourteenth Amendment Section 1.**

*The right of property is that sole and despotic dominion which one man claims and exercises over the external things of the world, in total exclusion of the right of any other individual in the universe. It consists in the free use, enjoyment, and disposal of all a person's acquisitions, without any control or diminution save only by the laws of the land.* 1 Bl.Comm. 138; 2 Bl.Comm. 2, 15; Great Northern Ry. Co. v. Washington Elec. Co., 197 Wash. 627, 86 P.2d 208, 217.

*The word [property]is also commonly used to denote everything which is the subject of ownership, corporeal or incorporeal, tangible or intangible, visible or invisible, real or personal; everything that has an exchangeable value or which goes to make up wealth or estate. It extends to every species of valuable right and interest, and includes real and personal property, easements, franchises, and incorporeal hereditaments.* Samet v. Farmers' & Merchants' Nat. Bank of Baltimore, C.C.A.Md., 247 F. 669, 671; Globe Indemnity Co. v. Bruce, C.C.A. Okl., 81 F.2d 143, 150.

According to Black's Law Dictionary 9th. Ed. "theft" means: *1. The felonious taking and removing of another's personal property with the intent of depriving the true owner of it; larceny. 2. Broadly, any act or instance of stealing, including larceny, burglary, embezzlement, and false pretenses.*

1. The Defendants ordered the arrest of Plaintiff, which consequently led to the taking of Plaintiff's personal private property in monies and his real human person – body corporate *on January 05, 2022*.
2. The Defendants deprived Plaintiff of his Fourteenth Amendment right when they ordered Plaintiff's person to be held for a ransom of $609.00.
3. The Defendants failed to secure Plaintiff's Fourteenth Amendment right when they ordered Plaintiff's person to be held for a ransom of $609.00.
4. As government agents Defendants should have known their duties were to protect the constitutionally protected unalienable rights of Plaintiff and if they knew, they acted willfully, knowingly and/or purposefully, and with deliberate indifference to not secure Plaintiff's constitutionally protected rights. Due to the nature of Defendants' conduct, Plaintiff is entitled to recover damages against the Defendants.

## COUNT 30 – DEFENDANTS DEPRIVED PLAINTIFF OF HIS FOURTEENTH AMENDMENT
(TAKING OF PLAINTIFF'S HUMAN BODY-KIDNAPPING)

Plaintiff incorporates the previous argument and following paragraphs by reference herein.

According to Black's Law Dictionary 9th. Ed. "kidnap" means:
   *To seize and take away by force or fraud, often with a demand for ransom.*

1. The Defendants participated in kidnapping of Plaintiff's body corporate *on January 05, 2022*.
2. The Defendants ordered the before mentioned agents of the Taylor County Constable office to seize Plaintiff's person in an 'act of false arrest' *on January 05, 2022* without due process of the law.
3. The Defendants' order caused Plaintiff to be held for a ransom of $609.00 *on January 05, 2022* (See Exhibit G).
4. The Defendants' actions deprived Plaintiff his Fourteenth Amendment right when they ordered Plaintiff's person to be held for a ransom of $609.00.
5. As government agents Defendants should have known their duties were to protect the constitutionally protected unalienable rights of Plaintiff and if they knew, they acted willfully, knowingly and/or purposefully, and with deliberate indifference to not secure Plaintiff's constitutionally protected rights. Due to the nature of Defendants' conduct, Plaintiff is entitled to recover damages against the Defendants.

## COUNT 31 – DEFENDANTS FAILED TO SECURE PLAINTIFF'S FOURTEENTH AMENDMENT
(TAKING OF PLAINTIFF'S HUMAN BODY-KIDNAPPING)

Plaintiff incorporates the previous argument and following paragraphs by reference herein.

According to Black's Law Dictionary 9th. Ed. "kidnap" means:
   *To seize and take away by force or fraud, often with a demand for ransom.*

1. The Defendants collectively participated in kidnapping of the Plaintiff *on January 05, 2022*.
2. The Defendants ordered the before mentioned agents of the Taylor County Constable office to seize Plaintiff's person in an 'act of false arrest' *on January 05, 2022* without due process of the law.
3. The Defendants' order caused Plaintiff to be held for a ransom of $609.00 *on January 05, 2022*.
4. The Defendants failed to secure Plaintiff's Fourteenth Amendment right when they ordered Plaintiff's person to be held for a ransom of $609.00.
5. As government agents Defendants should have known their duties were to protect the constitutionally protected unalienable rights of Plaintiff and if they knew, they acted willfully, knowingly and/or purposefully, and with deliberate indifference to not secure Plaintiff's constitutionally protected rights. Due to the nature of Defendants' conduct, Plaintiff is entitled to recover damages against the Defendants.

## COUNT 32 – CONSPIRACY TO COMMIT FRAUD

Plaintiff incorporates the previous argument and following paragraphs by reference herein.

FRAUD. *__An intentional perversion of truth for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to him or to surrender a legal right__; a __false representation of a matter of fact, whether by words or by conduct, by false or misleading allegations, or by concealment of that which should have been disclosed, which deceives and is intended to deceive another so that he shall act upon it to his legal injury__*. Brainerd Dispatch Newspaper Co. v. Crow Wing County, 196 Minn. 194, 264 N.W. 779, 780. *__A generic term, embracing all multifarious means which human ingenuity can devise, and which are resorted to by one individual to get advantage over another by false suggestions or by suppression of truth,__*

49

*and includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated*. Johnson v. McDonald, 170 Okl. 117, 39 P.2d 150.

*"Bad faith" and "fraud" are synonymous, and also synonyms of dishonesty, infidelity, faithlessness, perfidy, unfair ness, etc.* Joiner v. Joiner, Tex. Civ. App., 87 S.W. 2d 903, 914, 915.
*It consists of some deceitful practice or willful device, resorted to with intent to deprive another of his right, or some manner to do him an injury.* As distinguished from negligence, it is always positive, intentional. Maher v. Hibernia Ins. Co., 67 N.Y. 292; Alexander v. Church, 53 Conn. 561, 4 A. 103; Studer v. Bleistein, 115 N.Y. 316, 22 N.E. 243, 7 L.R.A. 702; McNair v. Southern States Finance Co., 191 N.C. 710, 133 S.E. 85, 88.
*It comprises all acts, omissions, and concealments involving a breach of a legal or equitable duty and resulting in damage to another.* Coppo v. Coppo, 163 Misc. 249, 297 N.Y.S. 744, 750.
*Fraud, in the sense of a court of equity, properly includes all acts, omissions, and concealments which involve a breach of legal or equitable duty, trust, or confidence justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another.* 1 Story, Eq.Jur. § 187; Howard v. West Jersey & S. S. R. Co., 102 N.J.Eq. 517, 141 A. 755, 757.

The Defendants committed fraud when they issued an illegal warrant under bond forfeiture, and falsely imprisoned Plaintiff against his will until he furnished a ransom (disguised as bail). While in custody and under obvious duress, Plaintiff was forced or induced to sign documents, which were prepared in advance, to waive his constitutionally protected rights, in exchange for his release. He would have never consented to signing the documents outside of being induced while in custody and under the pressure of constraint and threat.

1. The Defendants collectively participated in fraud against the Plaintiff *on January 05, 2022*.
2. Based upon their actions, the Defendants participated in, ordered, or approved of the before mentioned agents of the Taylor County Constable office to seize Plaintiff's person in an 'act of false arrest' *on January 05, 2022* without due process of the law.
3. The Defendants' actions were a breach of the Defendants legal or equitable duty, which took undue and unconscientious advantage of Plaintiff.
4. As government agents Defendants should have known their duties were to protect the constitutionally protected unalienable rights of Plaintiff and if they knew, they acted willfully, knowingly and/or purposefully, and with deliberate indifference to not secure Plaintiff's constitutionally protected rights. Due to the nature of Defendants' conduct, Plaintiff is entitled to recover damages against the Defendants.

**COUNT 33 – CONSPIRACY TO DEPRIVE PLAINTIFF OF EQUAL PROTECTION OF THE LAWS**

Plaintiff incorporates the previous argument and following paragraphs by reference herein.

The following Counts are based upon Defendants' collective actions of conspiracy against Plaintiff pursuant 42 U.S.C. § 1985 and are bundled:

**COUNT 34 – CONSPIRACY TO DEPRIVE PLAINTIFF OF DUE PROCESS OF LAW**
**COUNT 35 – CONSPIRACY TO DEPRIVE PLAINTIFF OF HIS PERSONAL LIBERTY**
**COUNT 36 – CONSPIRACY TO DEPRIVE PLAINTIFF OF HIS RIGHT TO PURSUE HAPPINESS**
**COUNT 37 – CONSPIRACY TO DEPRIVE PLAINTIFF OF HIS FIRST AMENDMENT RIGHT OF RELIGIOUS PRACTICE**
**COUNT 38 – CONSPIRACY TO DEPRIVE PLAINTIFF OF HIS FIRST AMENDMENT RIGHT OF RELIGIOUS EXPRESSION**
**COUNT 39 – CONSPIRACY TO DEPRIVE PLAINTIFF OF HIS FIRST AMENDMENT RIGHT OF RELIGIOUS EXPRESSION**
**COUNT 40 – CONSPIRACY TO UNLAWFUL SEIZURE PLAINTIFF'S PERSON**
**COUNT 41 – CONSPIRACY TO INTERFERE WITH PLAINTIFF IN MATTERS OF CONSCIENCE**
**COUNT 42 – CONSPIRACY TO UNLAWFUL SEARCH PLAINTIFF**

**COUNT 43 – CONSPIRACY TO SERVE UNLAWFUL WARRANT UPON PLAINTIFF**
**COUNT 44 – CONSPIRACY TO ARREST PLAINTIFF WITH NO PROBABLE CAUSE**
**COUNT 45 – CONSPIRACY TO INFRINGE UPON PLAINTIFF'S PRIVACY**
**COUNT 46 – CONSPIRACY TO DEFAME PLAINTIFF'S CHARACTER**

42 U.S.C. § 1985 **(2) Obstructing justice; intimidating party, witness, or juror**

*If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, **ANY** **PARTY*** or witness in any court of the United States from attending such court, *from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party* or witness *in his person* or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or *if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;*

**(3) Depriving persons of rights or privileges**

*If two or more persons in any State or Territory conspire* or go in disguise on the highway or on the premises of another, *for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws;* or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, *if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.*

When Defendants failed to notify Plaintiff of a court hearing, and issued a warrant for Plaintiff's arrest under bond forfeiture for missing said court hearing, Plaintiff was consequently falsely imprisoned, searched him, falsely convicted, and compelled under duress to pay for citations against his will and without due process of law based upon Defendants' collective actions. The court, judge, court administrator, and prosecuting attorney, should have known that they had no authority to bind any duties upon Plaintiff, and if they did not know, they should have known that they had no such authority.

As government agents Defendants should have known their duties were to protect the constitutionally protected unalienable rights of Plaintiff and if they knew, they acted willfully, knowingly and/or purposefully, and with deliberate indifference to not secure Plaintiff's constitutionally protected rights. Due to the nature of Defendants' conduct, Plaintiff is entitled to recover damages against the Defendants on Counts 34 through 46 pursuant 42 U.S.C. § 1985.

### III.    CONCLUSION

Plaintiff has been a model inhabitant of this planet for more than 60 years. His sole run-in with law enforcement has come at the sensitive issue of matter of conscious in regard to his religious convictions of exercising his right of locomotion as a matter conscience and which he has given up no right in order to take on any benefits, entitlements, or privileges of the state. This, and only this, has put him at odds with the police powers of the land of which the Supreme Court has stated that:

> *"...the mandate of a state issued driver's license forces the Plaintiff to pay enormous sums of money for the Plaintiff, if he insists on living in accordance with his religious beliefs. **This law clearly imposes a substantial burden on those beliefs**..."* **Burwell V. Hobby Lobby Stores, Inc. No. 13–354, 723 F. 3d 1114, Affirmed; No. 13–356, 724 F. 3d 377**

Beliefs are only one component of conscience. Plaintiff insists on living in accordance with matters of his conscience. On matters of conscience, it has been declared, and it has been held that:

> *"**All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences**... **No human authority ought, in any case whatever, to control or interfere with the rights of conscience in matters of religion**,"* **The Texas Constitution, Article 1. Bill of Rights, Sec. 6**

> *"It is declared in the Constitution, that "**no human authority can, in any case, control or interfere with the rights of conscience**." But what are those rights? Simply **a right to worship the Supreme Being according to the dictates of the heart; to adopt any creed or hold any opinion whatever on the subject of religion; and to do, or forbear to do, any act for conscience sake.**"* **Commonwealth v. Lesher, 17 Serg. & Rawle 155, 160 (1828)**

> *"**in the forum of conscience, duty to a moral power higher than the state has always been maintained.**"* **United States v. Seeger, 380 U.S. 163, 171 (1965)**

> *"**both morals and sound policy require that the state should not violate the conscience of the individual. All our history gives confirmation to the view that liberty of conscience has a moral and social value which makes it worthy of preservation at the hands of the state**."* **Ibib**.

> *"**religious training and belief," which Congress has defined as "belief in a relation to a Supreme Being involving duties superior to those arising from any human relation**."* **Ibib**.

Plaintiff religious beliefs and conscience has been to function as a servant of יהוה on this planet through a fragment of the Universal Sovereign's Spirit, born in a created biological vessel (Body Corporate) having the experience of a living being on earth (Genesis 2:7). Plaintiff biological vessel is not his own (1 Corinthians 6:19), but a mere instrument used to express, honor, and glorify יהוה in exclusive and absolute service.

> *One is in the service of another when he is so occupied that during the continuance of the relation he is bound to submit his will to the direction and control of that other in the prosecution of the occupation.* Cameron v. State Theatre Co 256 Mass. 466,152 N.E. 880,881

As such Plaintiff is not, and does function as a fictitious entity and has made no compacts with governments of secularism which would cause him to give up his natural rights. He has therefore operated in his personal and natural right of locomotion and being true to his religious conscience and convictions, which are lawful, has not given up any of his rights in order to acquire any state benefits, or privileges, including driver's licensing. Due to the abuse of the justice and law enforcement systems in Taylor County Texas on this matter, the Plaintiff has no choice but to seek actions to curb this abuse that he may serve his Heavenly Father without unnecessary governmental interference.

Plaintiff has submitted evidence in this complaint that, in regards to the Plaintiffs, the Defendants have operated illegally and unlawfully outside the bounds of any valid law or capacity, Constitutional Authority, jurisdiction, or venue with respect to Plaintiff's natural, common, constitutionally protected, and personal rights.

## IV.    JURISDICTION AND VENUE

The Plaintiffs, being a Private man, without a single permanent dwelling, living in, over, as well as outside of this union state Republic  and a victim of civil and criminal abuse by Defendants, a departments and/or agents of the state government of Texas, hereby makes an appearance before this court and demand that a Jury Trial be established herein to exercise its primary function to ascertain the true nature of Defendants' acts committed under color of law and in violation of numerous provisions of statutory, civil and Constitutional law as set forth above with the purview and jurisdiction of this court and Jury.

## V.    THE PARTIES

Plaintiff Steve Van Horne is a private entity, minister, and member of a religious society, which is created by, and under a Holy Trust. Plaintiff is under the trusteeship and ecclesiastical mandate of this religious order and has consented to its doctrine as a way of life, which subsequently has resulted in friction with unconstitutional activities of elements of the Texas law enforcement. Other than the issue of driver's license and state regulated verifications, Plaintiff has had no record or run-ins with Texas law enforcement. Plaintiff is *NOT* affiliated with any movement or group outside of what he has disclosed in his complaint.

Plaintiff is a living man. He is not a fictitious creation of the state and has not given up any of his rights endowed to him by his Heavenly Father or recognized and protected by the United States Constitution. Plaintiff has not made any agreements with the state of Texas Corporation which would cause him to owe the state of Texas any duties.

County Court of Law 2 is a governmental judicial entity of the state of Texas. County Court at Law No. 2 was created by the state of Texas Corporation Legislature in 1987 and adjudicates under the state of Texas Corporation's policies. The courtroom and offices are on the north part of the 5th floor of the Taylor County Courthouse at 300 Oak, Abilene, Texas, in Taylor County.

Judge Harriett L. Haag is the presiding judge over County Court of Law 2, or was on January 05, 2022. She was sworn in as judge on January 1, 2017, and took an oath to uphold the Constitution.

Brandi DeRemer was the court administrator for County Court of Law 2 on January 05, 2022. As court administrator, it was her job to set and maintain the court's schedule by coordinating with the clerk's office, constable's office, sheriff's office, Court-at-Law No. 1, district attorney's Office and all five justices of the peace. She is now the Taylor County Clerk.

Brandy Maldonado was the prosecuting attorney who signed Plaintiff's conviction. The last known mailing address for Ms. Maldonado is 300 Oak St Abilene, TX, 79602.

## PRAYER

WHEREFORE, It is the opinion of the Plaintiff that the Defendants failed in their judicial and administrative duties in their conduct throughout the judicial proceeding involving Plaintiff. Plaintiff respectfully seeks judgment be entered in his favor

With the argument presented the Plaintiff moves this Court to:

1. Award Plaintiff's claim damages in the amount of $22,500,000.00
2. Injunctive relief sufficient to train the state officials involved to secure and protect the right of Plaintiff.
3. Punitive damages against Defendants sufficient to deter further abuse of Plaintiff's common, natural and constitutionally protected rights.
4. Injunctive relief sufficient to protect Plaintiff, his religion, and his family from any future encroachment upon their rights.
5. Reasonable Propria Persona's fees, costs, and expenses of this legal action taken as provided by law;
6. Litigation expenses, costs, pre-and post-judgment interest as provided by law;

7. Pre-judgment and post judgment interest at the highest rates allowed by law; and

8. Such other relief as to which Plaintiffs may be entitled.

Respectively submitted this 22nd day of December 2023 via USPO by:

/s/ Steve Van Horne
Steve Van Horne
Ahfl3242@aol.com
3242 Beltway South
Abilene, TX 79606
(325) 692-2481
*In Pro Per*
*Suri Juris Plaintiff*

Note to United States District Clerk:

Please serve, by US Marshall, one copy of this complaint to each of the following:

Judge Harriett L. Haag and Taylor County Court At Law 2
300 Oak St. # 501
Abilene, Texas 79602, in Taylor County

Brandi Deremer
300 Oak St., #100
Abilene, TX 79602, in Taylor County

Brandy Maldonado
The District Attorney's office
300 Oak St., Oak St.,
Abilene, TX 79602, in Taylor County

After filing these documents please email a copy of the lawsuit which the Court stamped to:

Ahfl3242@aol.com

If this is not possible, please state in writing the printed federal procedural options by which service is issued and send to the email address provided:

Thank you for your time and patience in this matter.


Sincerely


/s/Steve Van Horne

CERTIFIED MAIL®

9589 0710 5270 1309 2203 49

U.S. POSTAGE PAID
FCM LG ENV
ABILENE, TX 79605
DEC 22, 2023

$6.90

R2305M147931-18

79601

Retail

RDC 99

3242 Beltway S.
Abilene, Texas 79606

RECEIVED

DEC 26 2023

CLERK U.S. DISTRICT COURT
NORTHERN DIST OF TEXAS

U S District Court
341 Pine Street Room 2008
Abilene Texas 79601